STATE of Missouri, Respondent,

v.

Tommy FITZGERALD, Appellant.

Tommy FITZGERALD, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 53761, 55960.

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 7, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 12, 1989.

Application to Transfer Denied Jan. 10, 1990.

176

William L. Webster, Atty. Gen., Deborah
L. Ground, Ronald L. Jurgeson, Asst. Attys.
Gen., Jefferson City, for respondent.

Robert C. Wolfrum, Asst. Public Defend-
er, St. Charles, and Henry B. Robertson,
Asst. Public Defender, St. Louis, for appel-
lant.

SIMON, Chief Judge.

This is a consolidated appeal under Rule 29.15(*l*) of appellant's direct appeal of his convictions for robbery in the first degree in violation of § 569.020 RSMo 1978 (Count I), armed criminal action in violation of § 571.015 RSMo 1978 (Count II), and unlawful use of a weapon in violation of § 571.030.1(4) RSMo Cum.Supp.1984 (Count III), and his appeal from the dismissal of his Rule 29.15 motion without an evidentiary hearing. Appellant was sentenced as a prior and persistent offender to consecutive terms of life imprisonment for Count I, life imprisonment for Count II, and five years imprisonment for Count III.

On direct appeal, appellant contends that the trial court erred: (1) when it overruled his written and oral objections to the application of § 558.019 RSMo 1986 (effective January 1, 1987), entitled "Minimum prison terms for certain repeat offenders," to appellant in this case when the alleged offenses occurred on June 1, 1985; (2) when it overruled his motion to suppress out of court and in court identifications, thereby violating appellant's Fourth, Fifth, Sixth, and Fourteenth Amendment rights; and (3) in violating his Sixth and Fourteenth Amendment rights to due process and to present witnesses in his own behalf when it refused to allow appellant to present the testimony of John Torrence and Brandon Eakright and refused to allow appellant to present an offer of proof as to Brandon Eakright's testimony. On his appeal from the dismissal of his Rule 29.15 motion without an evidentiary hearing, appellant contends that the motion court erred in: (1) overruling his objection to the state's verdict forms because there was no evidentiary basis for referring to appellant therein by two aliases; (2) overruling his Rule 29.15 motion because appellant was subjected to double jeopardy in being convicted of unlawful use of a weapon in addition to robbery in the first degree and armed criminal action, in that the act of exhibiting a weapon was the same forcible conduct used to prove all charges, and therefore, was part of and coterminous with robbery in the first degree and armed criminal action; and (3) overruling his claims of ineffective

assistance of counsel without an evidentiary hearing because appellant stated *prima facie* grounds for relief in that the existence of viable trial strategy cannot be established without a hearing, and appellant has sufficiently alleged prejudicial omissions on the part of counsel. We affirm in part and reverse and remand in part.

The record reveals the following facts viewed in the light most favorable to the jury verdict and disregarding any contrary evidence. *State v. Picone*, 760 S.W.2d 471, 473[1–4] (Mo.App.1988). An amended information charged appellant with committing the felonies of robbery in the first degree, armed criminal action, and unlawful use of a weapon on June 1, 1985, in connection with an incident occurring at Gasaway Pharmacy in St. Charles County, Missouri. The amended information additionally charged that:

> Defendant is a prior offender under Sections 558.016 & 557.036.4 RSMo, in that he has pleaded guilty to or has been found guilty of a felony. Defendant is also a persistent offender punishable by sentence to an extended term of imprisonment under Sections 558.016 and 557.-036.4 and further is a persistent offender under Section 558.019, RSMo, in that he has pleaded guilty to or has been found guilty of two or more felonies committed at different times.

Appellant filed a pretrial motion to suppress out of court and in court identifications alleging that: (1) he was arrested without warrant or probable cause to believe that he had committed a crime, therefore the out of court identifications were the poisonous fruit of the unlawful arrest; (2) the circumstances surrounding the out of court identifications were so inherently suggestive and conducive to mistaken identification as to violate his right to due process under the United States and Missouri Constitutions; (3) witnesses' testimony regarding in court identifications has been fatally infected by the tainted out of court identifications; and (4) said confrontation constituted a violation of appellant's rights under the United States and Missouri Constitutions. At the hearing on the

motion to suppress, the trial court received the testimony of three witnesses: Robert Shipley, Michelle Snyder, and Jack Shipley.

Robert Shipley, a pharmacist at the Gasaway Pharmacy, testified that, on June 1, 1985 at 6:30 p.m., he was working at the pharmacy counter in the back of the store, while his son, Jack Shipley, was working as the front cashier. Robert was speaking with a customer, Michelle Snyder, when a man carrying a gun suddenly appeared and announced, "This is a holdup; I want your drugs and money." The man listed the drugs that he wanted. Robert went to a safe, removed the drugs, and placed them in a bag, while the man remained "a foot and a half away" from him. Robert then removed drugs from a shelf. The man next instructed Robert to get down on the floor in front of the pharmacy counter. The altercation lasted approximately three to four minutes. It was daylight outside with fluorescent lighting inside. Robert testified that he had a clear view of the man's face.

Sometime later, Robert viewed a videotape lineup from which he made an identification in the home of Detective Shirley Blankenship. He testified that the people in the videotape lineup resembled the person at the Gasaway Pharmacy to the extent of "normal similarity that you would see in society." Before viewing the videotape lineup, he was not asked to "look at number so and so," but rather was told to see if the suspect appeared on the videotape lineup. In addition to identifying appellant from the videotape lineup, Robert also identified appellant in court, and the following ensued:

Q. Are you positive on this identification?

A. Yes.

Q. Any doubt in your mind?

A. No.

Michelle Snyder testified that she was at the Gasaway Pharmacy on June 1, 1985 at 6:30 p.m. picking up a prescription and speaking with Robert. A man entered the pharmacy announcing a holdup and told her to get down on the floor. Michelle was stunned, and the man pointed a gun at her face again telling her to get down on the floor. She had a "pretty good look at him."

Michelle viewed a videotape lineup at Detective Blankenship's home where she was told, "Now, I'm just going to show you a video and you tell me if you recognize anyone in this video." During the hearing, she identified appellant as the man who had pointed the gun in her face and told her to get down on the floor.

Jack Shipley testified that he was the cashier at the Gasaway Pharmacy on June 1, 1985 at 6:30 p.m. Jack stated that while the appellant was in the back area, an accomplice, stationed in the front of the store, brought Jack to the back area telling him to get down on the floor. Jack had a clear view of appellant, whom he noticed was carrying a gun.

Jack later viewed a videotape lineup with the instructions to "pick a person out that was there on June 1st." He testified in court that appellant was the man he saw in the back area of the Gasaway Pharmacy. At the conclusion of the evidence, the trial court denied the motion to suppress.

After the denial of his motion to suppress and prior to trial, appellant filed a Memorandum of Law and Objection to the application of § 558.019 RSMo 1986 (effective January 1, 1987) arguing that, since the alleged offenses occurred on June 1, 1985, application of the statute violates constitutional provisions regarding due process and equal protection and forbidding *ex post facto* laws. The trial court entered a specific finding denying appellant's objection stating, "The Court finds that the provisions of Section 558.019, RSMo. . (Effective January 1, 1987), shall apply to defendant and overrules his objection." Further, the trial court added:

In addition to that—and the Court bases it's [sic] finding on the Court's ruling that the Court finds at this time beyond any reasonable doubt that the Defendant is a prior and persistent offender in that he committed two or more felonies at different times, to-wit: Having pled guilty to the felonies of burglary in the

second degree and stealing in the Circuit Court of Jackson County, Missouri, on July 1, 1983; that he served more than a hundred and twenty days in the Department of Corrections of Human Resources on that offense; that he also pled guilty, on July 1, 1983, to the offense of stealing a motor vehicle in the Circuit Court of Jackson County, having occurred at a different time, and that he served more than a hundred and twenty days in the Missouri Department of Corrections of Human Resources. The Court finds the same beyond any reasonable doubt.

The case proceeded to trial. Robert, Jack, Michelle, and Detective Blankenship testified for the state. Robert's testimony essentially duplicated his earlier testimony at the hearing on the motion to suppress. He added that he observed appellant for two to three minutes. Appellant was not wearing glasses, nor was he disguised in any manner. There was another individual in the store besides appellant, and when they left, Robert saw a white car leave the parking lot in a hurry.

Jack also repeated his earlier testimony at the hearing on the motion to suppress. He added that he observed appellant for a "good two minutes," and that while he was on the floor, appellant stated that, if anyone moved, he would shoot.

Michelle likewise reiterated her testimony at the hearing on the motion to suppress. She added that the altercation lasted approximately three minutes, and that she was able to observe appellant for thirty to forty-five seconds. While she was on the floor, she heard appellant instruct them not to move a muscle and not to get off the floor, or he and his accomplice would "blow us away."

Later that evening after the robbery, Robert, Jack, and Michelle gave a description to Detective Blankenship. She noted no "large discrepancies" in their descriptions. Detective Blankenship assisted them in jointly making a composite picture of appellant.

Appellant and his accomplice were apprehended in Kansas City, Missouri. Detective Blankenship received a videotape lineup from the Kansas City Police Department which she showed separately to Robert, Jack, and Michelle in her home on June 4, 1985. She instructed them that: "there would be six white male subjects and that they were to view this video with the six white male subjects and they were to see if they recognized anyone." All three witnesses identified appellant from the videotape lineup and also identified appellant in court.

At the close of the state's evidence, the trial court held a hearing on the state's motion in limine seeking to prevent appellant from eliciting the testimony of Brandon Eakright and John Torrence. The state believed that Eakright would invoke his Fifth Amendment privilege against self-incrimination and elect not to testify. Therefore, Torrence, a public defender in Jackson County which encompasses Kansas City, would be called to testify as to prior conversations he had with Eakright. The gist of Torrence's testimony would be that Eakright had told Torrence, who was then representing appellant in connection with crimes committed in Kansas City, Jackson County, that "I did the robberies that [appellant's] charged with." The trial court sustained the state's motion noting that appellant had been charged with robberies in at least two counties besides St. Charles County, and that with regard to Eakright's alleged statement:

[W]e don't even know that it relates specifically to the offense in St. Charles. This man is charged with other robberies, he's in Kansas City when he makes this statement, he's talking to a Kansas City attorney, there's robberies pending in Kansas City, this is a robbery across the state of Missouri, there's nothing to show that there's any reliability to—to the statement, that it carries any truthfulness to it whatsoever, as to St. Charles County. We don't know which robbery it refers to.... I think, and until you make some, you know, offer of proof that's going to tie the man's representation—or, his statement, more specifically, to this offense in St. Charles,

I'm going to sustain their motion and deny the offer of both testimonies.

Appellant subsequently was allowed to present offers of proof as to Eakright's and Torrence's testimony. Eakright stated that he was currently at Boonville Correction Center because of a first degree armed robbery. He testified as follows:

Q. Did you tell Mr. Eakright—Mr. Torrence over the phone that you felt bad about [appellant] being charged with certain robberies?

A. I believe I did, yes.

Q. Did you tell Mr. Torrence over the phone that you had done those robberies that [appellant] was charged with?

A. I refuse to answer that question on the grounds of the Fifth Amendment, that they may tend to incriminate me.

\* \* \* \* \* \*

Q. You've been to St. Charles?

A. Yes.

Q. Could it have been in June of 1985?

A. I don't believe so, no.

Q. Okay. Do you know what date it was?

A. No, I don't.

Q. Could it have been in 1985?

A. I don't believe it was. No, it was '86.

\* \* \* \* \* \*

Q. Okay. Have you done armed robberies that you haven't been charged with?

A. I refuse to answer that question on the grounds of the Fifth Amendment, it may incriminate me.

In Torrence's offer of proof, Torrence stated that Eakright telephoned him in October of 1985 informing Torrence that he "had done the robberies that [appellant] was charged with, and that he wanted to do something to help, but didn't want to get in trouble, and what should I do?" Torrence currently was representing appellant for charges involved in Jackson County. Torrence met with Eakright and stated:

At that time, Brandon Eakright informed me that he himself had been charged with committing a robbery of a pharmacy in Clay County, Missouri, that he had counsel, that his counsel had advised him not to speak to me or anybody else any more about any offenses, and I, of course, backed off and didn't ask him anything further about what he had told me.

Eakright later telephoned Torrence in September of 1986. Torrence stated:

I asked him at that time, you know, number one, what his legal situation was. I found out that he had been—that he had pled guilty to the Clay County charges and had already been sentenced, and, then, I asked him: Well, you're going to have to tell me in detail, you know, what what [sic] went down at these robberies, you know, tell me what actually happened, who was involved, what happened, and he proceeded to describe to me, in detail, the offense which [appellant] was charged with in Clay County, Missouri, which involved a pharmacy robbery there, telling me at the time that he, meaning Brandon Eakright, had committed that robbery that [appellant] was charged with, along with an individual named Bob Tidwell.

Following the offers of proof, the trial court concluded:

The Court, at this time, is going to deny the offer of proof and sustain the State's motion to exclude the testimony for the reason that it is clear from the offer of proof that the reference that the witness Eakright was referring to, was referring to a charge that this Defendant had pending in Kansas City at the time; that the witness later specifically described the specific incidents of that robbery, and the witness Eakright, twice on direct examination, denied ever being in St. Charles County on—in the year 1985, and that absolutely excludes his reference to any offense that occurred in St. Charles County, and finds that it's totally inadmissible in this trial, and for those reasons it will be—the motion will be sustained and I will deny the offer of proof.

The following day of trial, appellant's trial counsel requested that he be allowed to recall Eakright. Counsel expressed a

good faith belief that Eakright would no longer assert his Fifth Amendment rights. Appellant, himself, informed the trial court that he had spoken with Eakright, who assured him he would no longer "take the Fifth Amendment," and who described in detail what had happened during the pharmacy robbery. The trial court ordered Detective Blankenship to visit Eakright, who was still incarcerated, advise him of his constitutional rights, interview him to see if he wished to make a statement, and if he did, take that statement and advise the trial court of it prior to the close of the defense's evidence. A representative from the public defender's office accompanied Detective Blankenship. Detective Blankenship advised Eakright of his constitutional rights, and informed the trial court that Eakright refused to make any statements. The representative from the public defender's office added: "He refused to make any statements to the officer. He said if he had anything to say, he wanted to say it in court." The trial court, declining to recall Eakright, stated:

Well, the Court gave him every opportunity yesterday to testify on direct examination; he did testify on direct examination, I think he testified to all matters that defense counsel requested him to disclose and to testify to, and to all the information and knowledge that you had any belief of. The witness, by his own testimony, made the—any testimony— hearsay testimony of the defense attorney inadmissible, because he basically stated everything himself, he made a full disclosure of the robbery in Kansas City; however, he specifically denied being in St. Charles County, so that he could have even participated in this crime down here.

The Court has given him an opportunity, based upon the disclosure, to have him waive his rights and make a statement if he wants to. The Court is not going to let any showboating go on in this trial, or create any—or even raise the defense where it is totally inadmissible.

Appellant presented the testimony of Joni Stevens, who was a customer in the pharmacy at the time of the robbery. When shown the appellant during trial, she testified, "I said that I'm not possibly—I'm not for sure, but it does not resemble the man that I saw in the pharmacy." Additionally, appellant presented an alibi defense based upon his own testimony and that of his former girlfriend, Danita Beth Kimball, that on June 1, 1985, appellant was at a motel in Kansas City, Missouri. Appellant stated that he had never been in St. Charles County prior to the court proceedings involved with this case. With the foregoing facts in mind, we initially turn to appellant's points on direct appeal.

■ In his first point, appellant contends that the trial court erred in overruling his objections to the application of § 558.019 RSMo 1986 (effective January 1, 1987), entitled "Minimum prison terms for certain repeat offenders," when the date of the alleged offenses was June 1, 1985. Specifically, he argues that application of this statute violates constitutional provisions regarding due process and equal protection and forbidding *ex post facto* laws.

Here, the trial court specifically found that the provisions of § 558.019 RSMo 1986 (effective January 1, 1987) applied to appellant. The statute requires appellant to serve sixty percent of his sentence before being eligible for parole or other early release. *See* § 558.019.2(2), 558.019.4(2), 558.019.7.

As we have stated in *State v. Martin*, 775 S.W.2d 196 (Mo.App.1989):

An *ex post facto* law is one which enlarges the penalty for a crime after the date of violation or declares acts as criminal which did not constitute crimes when they were committed *State v. Hillis*, 748 S.W.2d 694, 697 (Mo.App.1988). To establish an *ex post facto* violation, a law must be retrospective and disadvantage the offender affected by it. *Id.* Section 558.019 RSMo 1986 provides enhanced sentencing for repeat offenders.... The statute did not go into effect until January 1, 1987.... The Supreme Court of Missouri has determined § 558.019 RSMo 1986 disadvantages a defendant and can-

not be applied retroactively. *State v. Lawhorn*, 762 S.W.2d 820, 824–26 (Mo. banc 1988). *See also, State v. West*, 766 S.W.2d 103, 112–13 (Mo.App.1989; *State v. Hillis*, 748 S.W.2d at 697–98 (Mo.App. 1988). Section 558.019 RSMo 1986 requires a defendant to serve more time in jail before becoming eligible for parole then was required before the statute went into effect. This change in parole eligibility operates to the disadvantage of a defendant and applying the statute retroactively violates the *ex post facto* clause of the United States and Missouri Constitutions. *See, Lawhorn*, 762 S.W.2d at 826.

*Id.* at 197[1, 2].

Therefore, we conclude that the trial court erred in applying § 558.019 to appellant and remand for resentencing under the guidelines governing parole eligibility in place when appellant committed the offenses. Our determination that § 558.019 violates the *ex post facto* clause of the United States and Missouri Constitutions makes resolution of appellant's due process and equal protection contentions unnecessary.

In his second point, appellant contends that the trial court erred in overruling his motion to suppress in court and out of court identifications and violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights because: (a) the out of court videotape lineup identifications were the product of an unlawful arrest without warrant or probable cause; (b) the in court identifications were the product of that unlawful arrest and suggestive identification procedures; and (c) the state failed to meet its statutory burden of proof to show that the motion should be overruled.

▇ Upon the filing of a motion to suppress, § 542.296.6 RSMo 1978 provides:

The judge shall receive evidence on any issue of fact necessary to the decision of the motion. The burden of going forward with the evidence and the risk of nonpersuasion shall be upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled.

*See also State v. Baker*, 632 S.W.2d 52, 53[1] (Mo.App.1982). In reviewing a motion to suppress, the appellate court is free to disregard contrary evidence and inferences. The trial court's ruling shall be affirmed if there is sufficient evidence in the record to support its finding. *State v. Singer*, 719 S.W.2d 818, 821[1, 2] (Mo.App. 1986).

The record does not reveal the issuance of a warrant prior to appellant's arrest. Therefore, we must analyze whether probable cause existed justifying a warrantless arrest. Initially, we note that:

The determination of whether probable cause existed at the time of the arrest is *dependent upon the facts and circumstances within the knowledge of the arresting officers*, and if they have reasonably trustworthy information sufficient to warrant the reasonable belief that the person being arrested has committed the crime for which he was arrested.

*Id.* (emphasis added). "The factual issue of probable cause must be resolved from facts and circumstances peculiar to each particular case, bearing ever in mind the caveat that probable cause can never be satisfied with a bare suspicion of guilt." *State v. Howell*, 543 S.W.2d 836, 838[2–4] (Mo.App.1976). "Therefore, it becomes essential to learn exactly what the officers knew and did not know prior to the arrest of defendant...." *Id.*

▇ Here, at the hearing on the motion to suppress, the state presented three witnesses: Robert Shipley, Michelle Snyder, and Jack Shipley. The essence of their testimony already has been set forth in our rendition of the facts. The record, however, is completely devoid of any evidence regarding "the facts and circumstances within the knowledge of the arresting officers." *Singer*, 719 S.W.2d 821[1, 2].

The crimes were committed in St. Charles County, and appellant apparently was arrested in Kansas City. Neither Detective Blankenship nor any officer from the Kansas City Police Department testified as to how the information regarding the robbery and the description of appellant were conveyed to other police depart-

ments so that the Kansas City police officers knew to arrest appellant. Indeed, it was only at trial that it was revealed that appellant was apprehended by the Kansas City Police Department. At trial, Detective Blankenship testified that she had been given a description of appellant. She never testified as to what she did with the description, nor did any arresting officer testify at trial. The question of probable cause was left completely unanswered by the state. We agree with appellant's subpart (c) that the state failed to meet its statutory burden of proof with respect to this issue. We must next address subparts (a) and (b).

■ In subpart (a), appellant contends that the out of court videotape lineup identifications were the product of an unlawful arrest without warrant or probable cause. Appellant's argument essentially rests upon the "fruit of the poisonous tree" doctrine. However, in *State v. Taylor*, 630 S.W.2d 95, 96[4] (Mo.App.1981), we stated:

> Even if we were to hold the arrest improper, such an illegal arrest would not render inadmissible identification testimony arising from the ensuing lineup. *State v. Lynch*, 528 S.W.2d 454, 459 (Mo. App.1975). The defendant's presence cannot be assailed as the fruit of an illegal arrest. *United States v. Humphries*, 636 F.2d 1172, 1181 (9th Cir. 1980). *See also, United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).

*See also State v. Whitley*, 743 S.W.2d 482, 484[2] (Mo.App.1987). Here, the videotape of the lineup was not admitted into evidence. The trial court did not err in admitting the testimony of the witnesses as to the out of court videotape lineup.

■ In subpart (b), appellant alleges that the in court identifications were the product of the unlawful arrest and allegedly suggestive identification procedures. The effect of an unlawful arrest on identifications previously has been discussed. Therefore, we turn to the issue of whether suggestive identification procedures existed. By the phrase, "suggestive identification procedures," we assume that appellant

meant "suggestive *pretrial* identification procedures."

Initially, we note that in determining the admissibility of identification testimony that is alleged to have resulted from suggestive pretrial identification procedures, we apply a two-prong test: (1) was the pretrial identification procedure suggestive; and if so, (2) what impact did the suggestive procedure have upon the reliability of the identification made by the witness. *State v. Morant*, 758 S.W.2d 110, 117[11, 12] (Mo.App.1988). Reliability, rather than suggestiveness, is the linchpin in determining the admissibility of identification testimony. *Id.* Reliability shall be assessed under the totality of the circumstances, *Id.*, keeping in mind that, in reviewing a motion to suppress, we are free to disregard contrary evidence and inferences. *Singer*, 719 S.W.2d at 821[1, 2].

■ Our review of the record at the hearing on the motion to suppress reveals that appellant has failed to meet his burden in presenting evidence of impermissible suggestiveness. *Morant*, 758 S.W.2d at 117[13, 14]. Robert Shipley, Michelle Snyder, and Jack Shipley all testified that they viewed the videotape lineup. Robert and Michelle added that this occurred in Detective Blankenship's home. Robert stated that he was not instructed to "look at number so and so," but rather was "told to view the line-up; that they had some suspects and we viewed a line-up to see if the suspect appeared on the line-up." Michelle testified that Detective Blankenship instructed, "Now, I'm just going to show you a video and you tell me if you recognize anyone in this video." Robert stated that the people in the videotape lineup resembled the person at the Gasaway Pharmacy to the extent of "normal similarity that you would see in society." At trial, Detective Blankenship added that the three witnesses viewed the videotape lineup separately.

We conclude that the pretrial identification procedures were not impermissibly suggestive. Thus, appellant's argument that the in court identifications were the product of the suggestive pretrial identifi-

cation procedures is not meritorious. *See Morant*, 758 S.W.2d at 117[16].

In his third point, appellant contends the trial court erred and violated his Sixth and Fourteenth Amendment rights to due process and to present witnesses in his own behalf when the trial court: (a) refused to allow appellant to present the testimony of John Torrence that Brandon Eakright had confessed to him that he had committed the robberies for which appellant was charged; and (b) refused to allow appellant to call Eakright to the stand for either testimony or a mere offer of proof when counsel informed the trial court that he believed that Eakright would admit commission of the crime for which appellant was charged. Appellant further argues that said testimony was corroborated by other evidence in the case, was relevant and exculpatory, and that its exclusion was fundamentally unfair.

Prior to trial, appellant informed the state of his intent to call Torrence and Eakright as witnesses. In response, the state filed a motion in limine seeking to prevent this. The trial court allowed appellant to present offers of proof as to Eakright's and Torrence's testimony.

Eakright testified that he had spoken with Torrence. However, when asked whether he had committed the robberies with which appellant was charged, Eakright asserted his Fifth Amendment privilege against self-incrimination. When asked whether he had committed robberies for which he had not yet been charged, he again asserted his Fifth Amendment privilege. Eakright further stated that he had not been in St. Charles County in 1985. He identified himself in a photograph labelled "Exhibit A," which was never admitted into evidence.

Joni Stevens was shown Exhibit A during trial and asked if the man in the photograph was the man who had robbed the Gasaway Pharmacy. The following ensued:

Q. Okay. Did I ask you if the young man on your left—on the left side of that photo could have been the man who was in that pharmacy that day?

A. Yes.

Q. Okay. And did you tell me that that could have been the man?

A. No, I said it could possibly be him.

During Torrence's offer of proof, he testified that he had been contacted by Eakright in October of 1985. Eakright stated that he "had done the robberies that [appellant] was charged with, and that he wanted to do something to help, but didn't want to get in trouble, and what should I do?" The trial court sustained the motion in limine and denied the offers of proof concluding that, when Eakright had contacted Torrence, Eakright was referring to charges appellant had pending in Kansas City rather than in St. Charles County. The following morning, appellant's counsel renewed the request to recall Eakright asserting a good faith belief that Eakright would no longer assert his Fifth Amendment privilege. The trial court declined to recall Eakright.

In subpart (a), appellant contends that the trial court erred in refusing to allow appellant to present the testimony of Torrence that Eakright had confessed to him that he had committed the robberies for which appellant was charged. Appellant urges this court to rely on *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) where such exculpatory testimony was held to have been excluded erroneously.

Our Supreme Court, in analyzing the *Chambers* case, noted that "[g]enerally in Missouri, declarations against penal interests are not admissible exceptions to the hearsay rule in criminal proceedings." *State v. Turner*, 623 S.W.2d 4, 8[6, 7] (Mo. banc 1981), *cert. denied*, 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982). The facts of the present case are distinguishable from Chambers because the "hearsay statements involved in [*Chambers*] were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability." *Turner*, 623 S.W.2d at 9[6, 7] (quoting *Chambers*, 410 U.S. at 300, 93 S.Ct. at 1048). Our Supreme Court observed in *Chambers* that:

[E]ach declaration was made spontaneously to a close acquaintance and was corroborated by other substantial, reliable evidence including declarant's sworn confession, testimony of an eyewitness to the crime, evidence that declarant was observed with a gun immediately after the murder, and proof of declarant's prior ownership of gun like the murder weapon and subsequent purchase of a new weapon. Further, the number of statements (three) made independently to different persons and the fact that declarant obviously was aware that each statement was highly self-incriminatory and unquestionably against interest (after relating his involvement to one of the proferred witnesses, he urged the witness not to reveal his complicity to others) provided additional corroboration.

*Turner,* 623 S.W.2d at 9[6, 7] (citing *Chambers,* 410 U.S. at 300–01, 93 S.Ct. at 1048–49).

■ Where, as in *Chambers,* substantial indicia of reliability appear and declarant's complicity if true would exonerate the accused, the declarant's averments against a penal interest should not be excluded. *Turner,* 623 S.W.2d at 9[6, 7]. Here, however, the circumstances requiring admission of Torrence's testimony, as hearsay, are missing. No eyewitness testified that it was Eakright who had committed the robbery at the Gasaway Pharmacy. Joni Stevens, when shown a photograph of Eakright, merely admitted that the robber "could possibly be him." Eakright was not observed leaving the scene of the crime, nor was he in any way linked to the drugs that had been taken. No evidence was presented that Eakright possessed a gun. Further, even had Eakright's statements been presented through the testimony of Torrence to the jury, appellant would not necessarily have been exonerated because Torrence currently was representing appellant for charges pending in Kansas City. Eakright's statement may have been referring only to those charges. The trial court did not err in refusing to allow Torrence to testify.

■ In subpart (b), appellant contends the trial court erred in refusing to allow him to call Eakright to the stand for either testimony or a mere offer of proof when counsel informed the trial court that he believed that Eakright would admit commission of the crime for which appellant was charged. This request occurred the day after the trial court had previously allowed Torrence and Eakright to present offers of proof.

We note that:

The refusal to permit a witness to testify lies within the sound discretion of the trial court when it is claimed the witness will invoke his fifth amendment privilege against self-incrimination. *State v. Wright,* 582 S.W.2d 275, 282 (Mo. banc 1979). This is a matter which requires the trial court to exercise sound judgment giving due consideration to the facts and circumstances existent at the time the question arises. *Id.* at 283. The trial court need only make an adequate record that the privilege will be asserted by some reliable and certain means. *State v. Horne,* 691 S.W.2d 402, 404 (Mo.App.E.D.1985).

*State v. Loggins,* 698 S.W.2d 915, 918[1–3] (Mo.App.1985).

Here, the trial court had before it Eakright's repeated invocations of his Fifth Amendment privilege against self-incrimination during his offer of proof the previous day. No compelling evidence was presented suggesting to the trial court that Eakright would no longer assert the privilege since he had indicated to Detective Blankenship that he refused to make any statements, with the embellishment from the public defender's representative that: "He refused to make any statements to the officer. He said if he had anything to say, he wanted to say it in court." Additionally, it is important to note that Eakright specifically denied being in St. Charles County in 1985.

We conclude that an adequate record was made that the privilege would continue to be asserted by Eakright. Given the foregoing, we cannot say that the trial court abused its discretion in refusing to

allow Eakright to testify or to present a second offer of proof. Having addressed appellant's points on his direct appeal, we now turn to his appeal from the dismissal of his Rule 29.15 motion without an evidentiary hearing.

Appellant filed a *pro se* motion to vacate, set aside, or correct the judgment or sentence under Rule 29.15 on June 30, 1988. Subsequently, appellant filed a *pro se* addendum to his original motion on August 24, 1988. Appointed counsel then filed an amended motion on September 8, 1988, which was later followed by appellant's second *pro se* addendum on September 12, 1988. The motion court denied appellant's contentions in his various Rule 29.15 pleadings without an evidentiary hearing.

■ Initially, we note that appellate review is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.-15(j). The motion court's findings and conclusions will be deemed clearly erroneous only if a review of the entire record leaves the appellate court with a definite and firm impression that a mistake has been made. *Moton v. State*, 772 S.W.2d 689, 691 (Mo. App.1989).

■ In his first point, appellant contends that the motion court erred in overruling his objection to the state's verdict forms because there was no evidentiary basis for referring to appellant therein by two aliases in that the only reference to the aliases was outside the jury's hearing. He asserts that the verdict forms were intended to give the jury the impression that appellant falsified his name because of his criminal character to the prejudice of his reputation and his credibility as a witness.

This contention was not referred to in appellant's Rule 29.15 pleadings, but instead was mentioned in the motion for new trial. Appellant intended this point to be part of his direct appeal rather than his appeal from the denial of his Rule 29.15 motion. Indeed, in referring to this contention, appellant stated that, "This being a consolidated appeal, he now advances it together with post-conviction issues."

Although we have consolidated appellant's direct appeal and his appeal from the denial of his Rule 29.15 motion for purposes of resolution, we still address his contentions of error from both appeals separately; first addressing those alleged errors set forth in his direct appeal brief, then turning to the alleged errors in his Rule 29.15 brief. Because this alleged error was set forth in his Rule 29.15 brief, rather than his direct appeal brief, it has not been preserved for appellate review. Even had this point properly been presented in the direct appeal brief, it still would not have been preserved for appellate review. The text of the verdict forms submitted to the jury has not been set forth in full in the argument portion of appellant's brief as required by Rule 30.06(e).

■ Reviewing appellant's contention as a matter of discretion, we conclude the argument to be meritless. In *State v. Falls*, 595 S.W.2d 57 (Mo.App.1980), we addressed a similar issue in which verdict forms contained an alias. We noted that the charging information pled the alias, but that no evidence of the alias was adduced at trial except for the verdict forms. We stated, "although we do not condone the use of the alias in the verdict forms, we hold that alone was not so erroneous as to rule that the trial court abused its discretion...." *Id.* at 58[3]. In the present case, similar to *Falls*, the charging information pled the aliases. Appellant's counsel initially mentioned the aliases to the jury, and also failed to object to the state's use of them in cross-examining one of appellant's witnesses. Appellant may not claim trial court error on an issue he injected to the jury, and in which he failed to object. On the record before us, we cannot say that the trial court abused its discretion in submitting the verdict forms. Point denied.

■ In his second point, appellant contends that he was subjected to double jeopardy in being convicted of unlawful use of a weapon in addition to robbery in the first degree and armed criminal action, in that the act of exhibiting a weapon was the same forcible conduct used to prove all

charges, and therefore, was part of and coterminous with robbery in the first degree and armed criminal action.

Appellant admits that his convictions for robbery in the first degree and armed criminal action do not constitute double jeopardy under *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). The double jeopardy arises, he argues, when he is additionally convicted of unlawful use of a weapon. Appellant refers us to *State v. King*, 748 S.W.2d 47 (Mo.App.1988) in which we found a double jeopardy violation for convictions of armed criminal action and unlawful use of a weapon.

In *King*, a student at St. Louis University was on her way from the library to her residence hall when a man approached holding a knife. He forced her into his car, pointing the knife at her. The assailant was charged with kidnapping, armed criminal action, and unlawful use of a' weapon. Finding double jeopardy, we stated:

It is, of course, possible to commit armed criminal action without exhibiting a weapon in a threatening manner. But in the case before us the essential element of the "use" of a dangerous instrument to commit the felony of kidnapping was established solely by the proof that defendant exhibited the dangerous instrument to the victim in a threatening manner. Defendant cannot be punished twice for that exhibition.

*Id.* at 50[4] (footnote omitted). Likewise, appellant here argues that his exhibition of a gun was the same forcible conduct used to prove all charges. If the exhibition were coterminous to the robbery, appellant asserts, then it was not a separate act of force.

Appellant's reliance on *King* is misplaced. In *King*, the use of the knife, which formed the basis of the charges, was exhibited to a single victim. Here, there are multiple victims. The jury was instructed that, with regard to the crimes of robbery in the first degree and armed criminal action, it must find that property was taken from Robert Shipley. The verdict directing instruction for the crime of unlawful use of a weapon did not specifically refer to Robert Shipley. Rather, it required the jury to find that appellant had exhibited a firearm "in the presence of one or more persons."

The record reveals that appellant twice pointed a gun at Michelle Snyder's face and told her to get down on the floor. Michelle was a customer at Gasaway Pharmacy. Nothing was taken from her possession. Appellant independently directed his attention and exhibited his gun to Michelle, apart from his robbery of Robert Shipley. Clearly, more than one offense arose from the Gasaway Pharmacy robbery. *Compare State v. Adams*, 741 S.W.2d 781 (Mo. App.1987) in which the defendant received convictions for two counts of assault in the first degree, one count of burglary in the first degree, one count of unlawful use of a weapon, and three counts of armed criminal action. *Id.* at 783. There, the defendant approached his wife's trailer waving a gun at her, her friend, and several children. Upon entering the trailer, he used the gun in assaulting his wife and her friend. At the moment of entry, he committed burglary. The defendant alleged that the trial court placed him in double jeopardy by trying him " 'for flourishing a dangerous and deadly weapon when [he] was convicted of several armed criminal action convictions' and by trying him for multiple counts of armed criminal action arising out of the same incident." *Id.* at 784[2]. Noting that different acts were committed to different victims during the same transaction, this court found no double jeopardy violation. *Id.* at 784[3, 4]. Similarly, we conclude that appellant was not subjected to double jeopardy. Point denied.

In his final point, appellant contends that the motion court erred in overruling his claims of ineffective assistance of counsel without an evidentiary hearing because appellant stated *prima facie* grounds for relief in that the existence of viable trial strategy cannot be established without a hearing, and appellant has sufficiently alleged prejudicial omissions on the part of counsel. The alleged prejudicial omissions consist of counsel's failure to: (a) call, as a witness, Danita Beth Kimball's mother who

would have testified and produced a diary corroborating appellant's alibi defense; (b) procure expert testimony on the vagaries of eyewitness testimony; and (c) assert appellant's right to a speedy trial. We shall address each in turn.

Initially, we note that no evidentiary hearing is required if the files and record of the case conclusively demonstrate that appellant is entitled to no relief. Rule 29.15(g). Further, an evidentiary hearing is warranted only if: (1) the Rule 29.15 motion alleges *facts*, not conclusions, warranting relief; (2) the facts alleged raise matters unrefuted by the files and record of the case; and (3) the matters complained of resulted in prejudice to appellant's defense. *Johnson v. State*, 776 S.W.2d 456, 457 (Mo.App.1989) (emphasis added). To establish ineffective assistance of counsel, appellant must demonstrate that: (1) counsel's performance was unreasonable under prevailing professional norms; and (2) appellant was thereby prejudiced. Appellant faces the burden of overcoming the presumption that the challenged action might be sound trial strategy. *Id.*, at 458.

In subpoint (a), appellant alleges he was prejudiced by counsel's failure to call, as a witness, Danita Beth Kimball's mother who would have testified and produced a diary corroborating appellant's alibi defense. The state fails to address this contention.

We have reviewed appellant's original *pro se* Rule 29.15 motion, his two *pro se* addenda, and appointed counsel's amended Rule 29.15 motion. Nowhere is it alleged that appellant informed his counsel of this witness or the nature of her proposed testimony. "It is not ineffective assistance for counsel to fail to investigate witnesses that he does not know exist." *Edwards v. State*, 772 S.W.2d 703, 704[1, 2] (Mo.App. 1989). Further, even had counsel been made aware of this witness, appellant's Rule 29.15 pleadings demonstrate that her testimony would have been cumulative to that of Danita Beth Kimball and appellant, who testified that appellant was in Kansas City on the day of the robbery. The failure to produce cumulative evidence is not inef-

fective representation. *Johnson*, 776 S.W.2d at 458.

In subpart (b), appellant alleges he was prejudiced by counsel's failure to procure expert testimony on the vagaries of eyewitness testimony. In his Rule 29.15 pleadings, appellant somewhat clarifies this contention by stating that counsel should have called an expert witness on human perception. However, appellant alleged no facts to which this witness would testify. Thus, we only can speculate as to the efficacy of his testimony. Therefore, appellant's Rule 29.15 pleadings fail adequately to plead prejudice resulting from the failure to call this witness. *Id.*, at 458.

In subpart (c), appellant alleges he was prejudiced by his counsel's failure to assert appellant's right to a speedy trial. A review of appellant's Rule 29.15 pleadings reveal that the contention of error was that "counsel was ineffective in not virgously [sic] pursuing that the charges be dismissed against [appellant] for the state's violation of the 180 day speedy trial statute, all to the substantial prejudice to [appellant] herein." The state again fails to address this contention.

The crimes occurred on June 1, 1985. At that time, the 180 day statutory requirement had been repealed effective in June of 1984. *See State v. Maynard*, 714 S.W.2d 552, 554[1, 2] (Mo.App.1986). Section 545.-780 RSMo Cum.Supp.1984, effective June 7, 1984, contains no 180 day requirement. Even had the previous 180 day requirement been in effect, we note that:

> If a defendant seeks to obtain the remedy of dismissal under the statute which previously set the arbitrary limit of 180 days, he has the burden of showing not only the passage of more than 180 days but the further burden of showing that the failure to bring him to trial within that time was "occasioned" by the state.

*Maynard*, 714 S.W.2d at 554[3, 4]. Appellant has failed to plead facts showing that this delay was occasioned by the state. He merely concludes that the state "allowed and/or deliberately caused [his] case in question to be delayed Four hundred and

eighty-six (486) days...." Legal conclusions in Rule 29.15 pleadings do not entitle appellant to an evidentiary hearing. Point denied.

Judgment affirmed in part and reversed and remanded in part.

DOWD and HAMILTON, JJ., concur.