**STATE of Missouri, Respondent,**

v.

**Christopher MORANT, Appellant.**

No. 53091.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 2, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 7, 1988.

Application to Transfer Denied
Oct. 18, 1988.

William L. Webster, Atty. Gen., Elizabeth Levin Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

T. Patrick Deaton, Margulis & Grant, P.C., Clayton, for appellant.

SIMON, Presiding Judge.

Appellant, Christopher Morant, was convicted by a jury of five counts of first degree robbery, § 569.020, RSMo (1986) (hereinafter all further references shall be to RSMo (1986) unless otherwise noted), and five counts of armed criminal action, § 571.015. The trial court found appellant to be a prior and persistent offender and sentenced him to a total term of seventy-five years in prison.

On appeal, appellant contends the trial court erred: (1) in denying appellant's motion to sever offenses because appellant was prejudiced by trying all the charges together; (2) in denying appellant's motion to suppress out-of-court photographic and lineup identification which were unduly suggestive and tainted the in-court identification; (3) in failing to grant appellant's request for a mistrial after the court remedied the state's peremptory challenges of two black venirepersons by placing them back on the jury and replacing two white petit jurors whom the state was allowed to strike, which resulted in violation of appellant's right to a fair and impartial jury, due process of law, and his right to a full panel from which to exercise his peremptory challenges under § 546.180.3 which resulted in stimulating racial prejudice unrelated to the issues at trial; (4) in giving the "hammer instruction," MAI–CR 3d 312.10; after inquiring into the numerical division of the jury which prejudiced the appellant by coercing the jury to return guilty verdicts on the counts. We affirm.

Appellant was charged by a fifteen count information filed in lieu of indictment, and tried for crimes he committed in five incidents occurring on May 6, 8, 14, 15, and 16, 1986.

The sufficiency of the evidence is not in question. Viewed in the light most favorable to the verdict, the facts are as follows: On May 6, 1986, at approximately 10:00 a.m., appellant entered House of Morgan's Jewelry, a retail jewelry store, located in St. Louis County. Appellant was described as approximately six feet tall, of medium build, with closely cropped hair, wearing mirrored sunglasses and carrying a brief-case. After looking at various items in a display case, he chose to purchase an item. When appellant was asked by a clerk, Monica Vischer, for his credit card, he reached into his briefcase, pulled out a nickel or chrome-plated revolver, and ordered everyone to lie on the floor. He then ordered everyone to stand up and to put display case items into his briefcase. Once this was completed, he ordered everyone to lie down on the floor again and left the store. Present during the robbery were three employees, Monica and Jackie Vischer, and Glenn Wingbermuehle.

On May 8, 1986, at approximately 10:50 p.m., appellant entered Thrifty Car Rental at 4140 Cypress Road in St. Louis County. Appellant, again described as approximately six feet tall, of medium build, with closely cropped hair and wearing mirrored sunglasses, pulled a nickel or chrome-plated revolver from his clothing and told the employees, Karl Heitzenroeder and Kevin Vaughn, to lie down. He then had Karl Heitzenroeder open the safe, retrieve the money bag, and take the telephones off the wall. After taking the cash bag, appellant ordered the employees to lie on the floor for ten minutes and then left the premises.

On May 12, 1986, at approximately 2:30 p.m., Robert Lee, a Clayton police officer, received an anonymous telephone call concerning the House of Morgan robbery. The caller identified appellant and stated that he had possibly used a red Camaro during the robbery.

On May 14, 1986, at approximately 11:00 a.m., appellant, matching the same general physical description given in the earlier robberies and wearing mirrored sunglasses, reentered Thrifty Car Rental on Cypress Road, pulled a nickel or chrome-plated revolver from a newspaper and ordered the employees, Sue Brockel and Sue Zwygart, and a customer to lie down on the floor. He cut the telephone wires and told one of the employees to open the safe. While waiting for the safe to be opened, appellant took the customer's wallet. Appellant took the money bag and left the premises.

On May 15, 1986, at approximately 11:00 p.m., James Pate, an employee of Town and Country Cleaners, which is directly in front of Thrifty Car Rental at 4156 Cypress Road, entered the premises and left the keys in the door. Pate heard the door close and went to the door to investigate. He saw the appellant leaving the doorway. At Pate's approach, the appellant turned around, pointed a gun at Pate, and told him to "get back in there." After appellant left, Pate found that the keys were missing out of the door. Pate described the robber as approximately six feet tall, of medium build, with short hair. Pate also testified that appellant had driven a red Camaro by the cleaners the day before.

On the evening of May 16, 1986, an area resident, who was aware of the Thrifty Car robberies and knew that the police were looking for a person in a red car, reported a red car in the parking lot by the Town and Country Cleaners. She stated that a black man had gotten out of the car, walked around the corner and walked back.

Later that evening, Officer Kincaid received a dispatch that a red Camaro driven by a black male was seen in the area where the previous robberies had occurred. He saw the red Camaro with two black males pass by as he sat on the shoulder of east-bound I–70. He followed the red Camaro and stopped the car for speeding. The car left the scene while Officer Kincaid was waiting for backup. Officer Kincaid proceeded to pursue the red Camaro in a high speed chase down I–170, then exited west-bound onto Delmar, where the passenger, appellant, fired two shots "in the direction of" the police car. The chase ended at Price and Olive when the red Camaro was involved in a collision. Appellant was arrested at the scene and mirrored sun-glasses and a gun with two spent cartridges were found under the seat of the car.

On May 12, 1986, Monica and Jackie Vischer, and Glenn Wingbermuehle looked at a photo array. Only Monica Vischer made a positive identification of appellant. All three House of Morgan employees identified appellant in a lineup on May 19, 1986.

They also identified appellant in court as the robber.

On May 16, 1986, Karl Heitzenroeder, a Thrifty employee from the first robbery, and Sue Brockel, a Thrifty employee from the second robbery, identified appellant from a photo array. Also present was Sue Zwygart, another Thrifty employee from the second robbery, who could not identify appellant at that time. Kevin Vaughn, from the first robbery at Thrifty, identified appellant's photograph on May 19. All four of the Thrifty employees identified appellant in court as the robber in the Thrifty Car robberies.

On May 15, 1986, James Pate identified appellant's photograph as the person at Town and Country Cleaners. He also identified appellant in court.

At trial appellant did not testify and did not offer evidence.

■ In his first point, appellant contends that the trial court erred in denying his motion to sever offenses. Appellant's contention requires a two-part inquiry on review. The first issue that must be addressed is whether the offenses were properly joined in the information. Assuming that proper joinder exists, the second issue is whether the trial court abused its discretion in refusing to sever the offenses and ordering them tried in a single prosecution. *State v. Harris*, 705 S.W.2d 544, 547[1] (Mo.App.1986). Joinder is either proper or improper under the law while severance is discretionary. *State v. Smith*, 682 S.W.2d 861, 863[1] (Mo.App.1984).

■ A defendant in a criminal case does not have a federal or state constitutional right to be tried on only one offense at a time. *State v. Bextermueller*, 643 S.W.2d 292, 295[9] (Mo.App.1982). Joinder is governed by § 545.140(2) which provides as follows:

Notwithstanding Missouri supreme court rule 24.07 [1986], two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or infractions, or any combination

thereof, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Joinder of more than one offense in a single information is also provided for in Supreme Court Rule 23.05 (1986), which states:

*Misdemeanors or Felonies—Indictment or Information—Joinder of Offenses*

All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.

■ Liberal joinder of criminal charges is favored in order to achieve judicial economy. *State v. Smith*, 682 S.W.2d at 863[4]. In determining whether joinder is proper, we consider only the state's evidence. *State v. Clark*, 729 S.W.2d 579, 582[3–5] (Mo.App.1987).

■ For joinder to be proper, the manner in which the crimes were committed should be so similar that it is likely that the same person committed all the charged offenses. *State v. Clark*, 729 S.W.2d at 581[2]. Under § 545.140(2), similar tactics are sufficient to constitute acts "of the same or similar character." *State v. Harris*, 705 S.W.2d at 550[3]. In order to find a "common scheme or plan" under Rule 23.05, the offenses charged must be the product of a single or continuing motive. *State v. Allen*, 674 S.W.2d 606, 607[1] (Mo. App.1984).

■ This case involves four robberies and an assault stemming from a car chase which resulted in appellant's arrest. These incidents occurred within a week and a half period. In all the robberies the robber was described as a black male, approximately six feet tall, of medium build, with closely cropped hair. At the first three robberies, he wore mirrored sunglasses, displayed a nickel or chrome-plated revolver, ordered everyone to lie on the floor and had an employee collect the goods or money. All the robberies took place at the businesses either early or late in the business day, when customers were less likely to be present. These tactics tend to show that the House of Morgan and Thrifty Car robberies were "of the same or similar character," therefore, joinder was proper as to the counts arising from these robberies.

Arguably the robbery at the Town and Country Cleaners and the assault on Officer Kincaid could be considered as separate and distinct crimes from the three previous robberies. The Town and Country Cleaners robbery and the assault on Officer Kincaid are related to each other because the car chase and the shots fired at Officer Kincaid were an obvious outgrowth of the appellant's desire to escape arrest. In a trial on the assault charge involving Officer Kincaid, evidence of the Town and Country robbery would be admissible because it is "so linked in circumstance" to the assault charge. Evidence of the assault could not be fully shown without proving the robbery and attempt to escape. *See Burnside v. State*, 552 S.W.2d 339, 342[5–7] (Mo.App.1977). Had appellant been charged only for the robberies of House of Morgan and Thrifty Car Rental, the circumstances of his arrest would have been admissible in a trial on those charges to show an attempt to evade arrest. *State v. Wallace*, 644 S.W.2d 382, 384[1] (Mo. App.1982); *see State v. Jones*, 583 S.W.2d 212 (Mo.App.1979). "The conduct of the accused at the time of his arrest, which shows such attempts, has long been held to be admissible as having probative value on the issue of defendant's guilt and to constitute proper evidence for a jury's consideration." *State v. Wallace*, 644 S.W.2d at 384[1]. Thus, evidence of the chase, assault, and evasion of arrest would be admissible as evidence of guilt. The assault charge is properly joined with the first three robberies as evidence of appellant's identity as the robber and as evidence of his guilt. Since the assault charge is properly joined, then the Town and Country robbery charge is also properly joined because it is "so linked in circumstance" as to

be admissible evidence. The assault charge and evasion of arrest is a direct result of appellant's robbery of Town and Country Cleaners and his activities in that vicinity the very next day which could be said to evince a continuing scheme to rob businesses. Therefore, joinder is proper on the counts rising from the Town and Country Cleaners robbery and the subsequent assault charge from the car chase and appellant's arrest.

Next, we must determine whether the trial court erred in not severing the offenses. Section 545.885(2) provides for severance as follows:

> If it appears that a defendant or the state is substantially prejudiced by a joinder of the offenses for trial, upon a written motion of the defendant or the state and upon a particularized showing of substantial prejudice, the court may grant a severance of offenses or provide whatever relief justice requires. For purposes of this section, "substantial prejudice" shall mean a bias or discrimination against the defendant or the state which is actually existing or real and not one which is merely imaginary, illusionary or nominal.

Rule 24.07 further provides:

*Misdemeanors or Felonies—Severance of Offenses*

When a defendant is charged with more than one offense in the same indictment or information, the offenses shall be tried jointly unless the court orders an offense to be tried separately. An offense shall be ordered to be tried separately only if:

(a) A party files a written motion requesting a separate trial of the offense;

(b) A party makes a particularized showing of substantial prejudice if the offense is not tried separately; and

(c) The court finds the existence of a bias or discrimination against the party that requires a separate trial of the offense.

■ When offenses are properly joined, the proper standard of review requires that we reverse the denial of a severance only upon a showing of both an abuse of discretion and a clear showing of prejudice. *State v. Allen*, 674 S.W.2d at 607–608[3]. While joinder is encouraged, it should be balanced by a consideration of possible prejudice to the defendant. *Id.* In assessing prejudice the court should consider, among other relevant factors, the number of offenses charged, the complexity of the evidence to be offered and the ability of the jury to distinguish the evidence and apply the law intelligently to each offense. *State v. Decker*, 591 S.W.2d 7, 9–10[1–3] (Mo. App.1979).

As the state notes, the appellant was initially charged for a prior robbery of House of Morgan's Jewelry which took place in 1985, but the trial court granted appellant's motion for severance as to that count.

■ The evidence in this case was not complex; it consisted primarily of the victims' and the detectives' direct testimony. There is no reason to believe that the jury could not distinguish the evidence and legal principles applicable to each offense. *State v. Smith*, 735 S.W.2d 41, 45[8] (Mo. App.1987).

Appellant argues that he was prejudiced because this was a single trial on multiple charges which convinced the jury that he was guilty of at least some of the charges. We fail to see the prejudice of which appellant complains. We are guided by what our Supreme Court said in *State v. Williams*, 603 S.W.2d 562, 568[10] (Mo. 1980):

> We agree with appellant that the offenses charged in this case were so interrelated to each other that proof of one offense would possibly tend to establish the others. But, this does not, in the absence of other circumstances, result in prejudice or entitle an accused to a severance. A continuous transaction involving several legally distinguishable offenses, as occurred in this case, permits the State in a separate trial for any one of the offenses to present evidence as to all the offenses involved. Appellant cannot claim prejudice because what would result in a separate trial of each offense

would also result when a single trial is held of all offenses.

(Citations omitted).

In this case, even if severance had been granted the same evidence could have been offered in each of two separate trials. Such evidence of other crimes could be admitted to establish motive, intent, the absence of mistake, a common scheme or plan, or the identity of the person charged with the commission of the crime on trial. *State v. Allen,* 674 S.W.2d at 608[5].

The evidence of the robbery at House of Morgan's Jewelry would have been admissible to identify appellant as the Thrifty Car Rental and Town and Country Cleaners gunman because the description was the same in all four robberies. The evidence of each robbery would have been admissible in separate trials to establish identity and to show that there was a common scheme to rob businesses in a short period of time. As we have shown earlier, the charge of assault arising out of the car chase is admissible evidence of an attempt to escape arrest, which goes to show consciousness of guilt. *See State v. Wallace,* 644 S.W.2d at 384[1]; *State v. Valentine,* 646 S.W.2d 729 (Mo.1983). Any prejudice to the appellant that results from this single trial would also result in separate trials. *State v. Williams,* 603 S.W.2d at 568[10].

Appellant also claims that he was prejudiced because of his inability to present alibi defenses for the House of Morgan robbery, the first Thrifty Car robbery, and the Town and Country Cleaners robbery. He argues that had he testified or presented evidence as to some but not all the offenses, it would have appeared to the jury that he was admitting guilt on the offenses for which he had no defense. Essentially, appellant is claiming that if he had invoked his Fifth Amendment right against self-incrimination, he would not have been successful. We find no merit to this argument. Initially, the record shows that appellant named alibi witnesses who could have testified without affecting appellant's Fifth Amendment right. Additionally, cases show that defendants who have testified regarding an alibi defense on one offense have successfully invoked their Fifth Amendment right when cross-examined on another offense. *See State v. White,* 755 S.W.2d 363, at 368 (Mo.App. 1988). We find appellant's arguments unpersuasive and conclude that appellant has failed to carry the burden imposed upon him by § 545.885(2). The trial court did not abuse its discretion by denying appellant's motion to sever.

Appellant's second point relates to the pretrial photographic and lineup identification of appellant by Monica and Jackie Vischer, and Glenn Wingbermuehle, employees of House of Morgan's Jewelry, which took place on May 12 and May 19, respectively. Appellant argues that the trial court erred in admitting these individuals' testimony because the identification procedures were impermissibly suggestive and the identifications were unreliable. Appellant also argues that the suggestiveness of the pretrial identification procedures tainted the in-court identifications.

On May 12, 1986, Officer Griffin took a photographic array to House of Morgan's Jewelry. Six photographs were in a manila envelope and the witnesses were told to see if they could identify a suspect. Each witness was separated and shown the pictures. After they each viewed the pictures, they were cautioned about discussing the identification with the other witnesses. Officer Griffin was present during the entire identification. Only Monica Vischer made a positive identification of appellant's picture.

On May 19, the Clayton police arranged a lineup for the House of Morgan witnesses. Officer Griffin was again present. The lineup consisted of four suspects, including appellant. Appellant's jumpsuit was the only one to have paint splattered on it. The suspects' positions in the lineup did not change as each witness viewed it.

Monica and Jackie Vischer arrived first and identified appellant one at a time. After they made identifications, Jackie went back to the jewelry store so that Glenn Wingbermuehle could leave to view the lineup. Glenn also made a positive identification of appellant as the robber.

All three witnesses viewed the lineup individually and were told to look at the lineup to determine if they could recognize the robber. Monica and Jackie were unable to converse concerning the lineup because Officer Griffin escorted each one in and out of the lineup. Jackie was told not to speak to Glenn about the identification when she returned to the jewelry store.

■■■■ In determining the admissibility of identification testimony that is alleged to have resulted from suggestive pretrial identification procedure, we apply a two prong test: (1) was the pretrial identification procedure suggestive; and if so, (2) what impact did the suggestive procedure have upon the reliability of the identification made by the witness? *State v. Williams*, 717 S.W.2d 561, 564[4] (Mo.App. 1986). However, it is well to remember that reliability rather than suggestiveness is the linchpin in determining the admissibility of identification testimony and "reliability is to be assessed under the totality of circumstances." *Id.* (citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977)). Although appellant argues that the initial photographic array was unduly suggestive, he provides no factual basis for this claim. Our review of the record convinces us that the identification process was not impermissibly suggestive.

■■■■ The showing of a single photograph of a suspect to a witness, where there is no improper comment or activity on the part of the police in showing the photograph, does not result in impermissible suggestiveness. *State v. Thomas*, 705 S.W.2d 579, 582[1] (Mo.App.1986). Here, all three witnesses were shown six photographs and told to see if they could identify the robbers. The danger of suggestiveness arises from the use of a single photo or some emphasis on one photo in a group. *State v. Moore*, 726 S.W.2d 410, 412[1, 2] (Mo.App.1987). This was not the case here. Moreover, each witness separately viewed the array and was cautioned about discussing their identification with the other witnesses. Clearly, appellant has not met his burden in that he has presented no evidence of impermissible suggestiveness in the circumstances of the photo array.

■■■■ Appellant also argues that the physical lineup that took place on May 19 was unduly suggestive. He complains that the identification process was unduly suggestive in that: (1) the witnesses were not kept separated during the physical lineup; (2) appellant's spotted jumpsuit made him stand out from the other suspects; and, (3) the positions of the suspects did not change.

■■■ The evidence does not establish that the procedures were unduly suggestive. Review of the record shows that Monica and Jackie Vischer separately viewed the lineup. Officer Griffin escorted each one out to the waiting area as the other went in to view the lineup. Additionally, when Jackie Vischer left the police station to return to the store, she was told not to speak about the lineup and her identification to Glenn. Because each witness was separated and individually viewed the lineup, there is no suggestiveness in leaving the suspects in the same position. Officer Griffin also testified that this was standard procedure. The fact that appellant was the only man to have spots of paint on his jumpsuit does not make the lineup suggestive. Features such as clothing are of only secondary importance to the factors of size, color, and sex in identifying suspects, and may create suggestiveness only when they constitute the sole focal point of identification. *State v. Sanders*, 621 S.W.2d 386, 388–389 (Mo.App.1981). The spots on appellant's jumpsuit were obviously not a focal point of identification because Monica Vischer testified that she did not notice the paint on the jumpsuit. Thus, we conclude that the lineup was not impermissibly suggestive.

Appellant's argument that the suggestive pretrial identification procedures tainted the in-court identification does not merit discussion as the pretrial procedures were not impermissibly suggestive. *See State v. Moore*, 726 S.W.2d 410, 412[4, 5].

Under the circumstances, our inquiry is at an end as we need not address the

question of the reliability of the pretrial identification and the in-court identification. The circumstances relating to the witnesses' out-of-court identifications and their in-court identifications go to the weight of their testimony and not to the admissibility of the identifications.

In appellant's third point, we are asked to review the appropriateness of the trial court's remedy for the state's unconstitutional exercise of its peremptory challenges on the basis of race.

Appellant argues that he was deprived of his right to trial by a fair and impartial jury and of his right to exercise peremptory strikes under § 546.180 because of the trial court's failure to grant appellant's request for a mistrial.

Under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), when a defendant in a state criminal trial can establish a prima facie case of racial discrimination based on the prosecution's use of peremptory challenges to strike members of the defendant's race from the venirepanel, the burden shifts to the prosecution to come forward with a neutral explanation for those challenges. *See Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). In *Batson*, the United States Supreme Court declined to rule on what remedies would be appropriate after a finding of discrimination. *Id.* at n. 24.

The voir dire examination and challenges for cause were completed shortly before the noon recess. Of the thirty-one venirepersons remaining, Diane Taylor and Hazel Hawkins (who replaced a venireperson struck for cause) were the only black members of the panel. During the noon recess, the attorneys made their peremptory strikes. The record does not disclose the order of peremptory challenges or who was struck other than venirepersons Diane Taylor and Hazel Hawkins. Thereafter, with the "final" twelve jurors in the jury box, the trial judge, in open court, inquired if the jury was the one that had been selected. The state replied it was, but defense counsel asked to approach the bench. Outside the jury's hearing, defense counsel said that the state struck the only two black panel members and "we feel that this is not a jury selection of the defendant's peers."

No inquiry of the panel concerning race had been made during voir dire. During this side-bar conference, however, the trial judge allowed defense counsel to establish that venirepersons Taylor and Hawkins were both black. The trial judge then asked the state to give reasons for striking these two blacks. After hearing and rejecting the reasons, the court put the two black venirepersons back on the jury, directing the state to make two other strikes.

At this point, defense counsel said "I think that this whole panel has been tainted by bringing those up; and if we put them back on the panel now, I think they would be tainted. But whatever the court decides." The court then asked "How is the defendant prejudiced by what we have done?" To this question, defense counsel responded "Well, we would first argue that so much attention would have been drawn to these two people coming back on the panel. That's all we would argue." After the trial judge said that he didn't see how the appellant could be prejudiced, the state then struck two other jurors. No complaint was made by the appellant about the two particular jurors that were stricken. No procedural deficiency was raised, nor did the defendant ask that the process for peremptory challenges be reopened. No further objections were made as to the composition of the jury.

In his motion for new trial, appellant alleged trial court error in "overruling defendant's motion to strike the jury panel and voir dire a new jury panel." No such motion or request was made. In his brief, for the first time, appellant argues that he was deprived of his procedural right under § 546.180 to make his peremptory strikes after the state made its strikes.

An assignment of error in a motion for new trial, as well as on appeal, must be based upon an objection made in the trial court. *State v. Jones*, 515 S.W.2d 504, 506[3, 4] (Mo.1974). A defendant may not assign as error in a motion for new trial that the court refused to grant a mis-

trial when he did not request it. *State v. Durham,* 367 S.W.2d 619, 624[7–9] (Mo. 1963). Since no objection was made at trial, and no request for mistrial was made, defendant's point has not been preserved. Thus, review is limited to plain error. Rule 30.20.

Did the action taken by the trial court result in manifest injustice or a miscarriage of justice? It did not. Here, both the state and the appellant made their peremptory challenges and the "final" twelve jurors were in the jury box. Not until that time did defense counsel attempt to raise a challenge based on *Batson.* The trial court allowed him to do so, and ultimately placed the two blacks on the jury. When that occurred, defendant did not object or complain that the two were prejudiced or state any reason to indicate that they were unsuitable to serve as jurors.

The purpose of the jury selection process is to obtain a fair and impartial jury. *State v. Brown,* 554 S.W.2d 574, 578[3–6] (Mo.App.1977). The manner in which the trial judge corrected the *Batson* violation may well have been erroneous, but appellant has not shown any prejudice. The burden of such demonstration falls on the appellant. *State v. Berry,* 609 S.W.2d 948, 953[12–14] (Mo. banc 1980). Appellant does not contend that any of the individual jurors were not fair and impartial. Basically, appellant complains of procedural error without showing prejudice. "Prejudicial error" is a condition precedent of "plain error." *State v. Miller,* 604 S.W.2d 702, 706[3–6] (Mo.App.1980). There being no prejudicial error, there was no plain error and appellant's point is denied.

Appellant, in his final point, asserts that the trial court erred in giving the "hammer instruction," MAI–CR 3d 312.10, after inquiring into the numerical division of the jury which coerced the jury into returning guilty verdicts on the counts. There is no indication from the record that the trial judge was informed that the numerical split was in favor of conviction or not. Therefore, the trial judge did not coerce the jury to return guilty verdicts on the counts. We find no merit to this claim.

We affirm.

CRANDALL and GRIMM, JJ., concur.