STATE of Missouri, Plaintiff–Respondent,

v.

Jimmie MATTHEWS, Defendant–Appellant.

No. 56906.

Missouri Court of Appeals, Eastern District, Division Four.

June 12, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 11, 1990.

Application to Transfer Denied Sept. 11, 1990.

Joseph Howlett, James Jay Knappenberger, Clayton, for defendant-appellant.

James C. Leritz, Asst. Pros. Atty., St. Louis, for plaintiff-respondent.

STEPHAN, Judge.

Jimmie Matthews appeals his convictions of the class A misdemeanor of third degree assault, § 565.070 RSMo 1986, for which the court assessed a fine of $250.00, and of the class A misdemeanor of hindering prosecution, § 575.030 RSMo 1986, for which the jury imposed a sentence of 30 days in the St. Louis Medium Security Institution. We affirm.

On February 17, 1988, Minnie Hester parked her automobile on a parking lot at the corner of 14th and Delmar in the City of St. Louis. At approximately 3:00 p.m., Michael Herbis, an employee of Commercial Letter Inc., located at the same intersection, saw an unidentified man stooped

down behind her car. Herbis and David Pell, another Commercial employee, ran outside instructing another employee to call the police because someone was tampering with a car on the lot. Once on the lot, Herbis and Pell saw the man attempting to scrape off the car's license decal. When confronted, the unidentified man said that he was trying to get into his car. Pell said that the car was his, although it was not, and that he and Herbis would wait until the police arrived. The man took out a small knife, waved it at the two, and ran away with Herbis and Pell in pursuit.

Other Commercial employees joined the chase. They flagged down a passerby in a pickup truck who drove ahead of the suspect, and stopped him by threatening him with an ax handle. The employees caught up and surrounded the individual. Herbis grabbed a tire jack stem out of the back of the truck. The scene, however, was calm, and the man was not physically touched.

Appellant, a minister and city alderman, arrived at the scene and exited his vehicle. When he inquired about what was happening, Pell told him that the man was caught tampering with cars and the group was waiting for the police to arrive. Appellant identified himself as an alderman, displayed his aldermanic badge, and stated that he would take the man into custody. Appellant testified that he did not see a knife in the suspect's hand and therefore felt the situation was life threatening to the suspect. When appellant placed the suspect in his car, Gerald Holdman, another Commercial employee, grabbed appellant's shoulder and told him that the group was waiting for the police. Appellant responded "I am the police" and got into his car.

Pell went to the front of the vehicle to copy the license plate number. Appellant put the car in gear and drove at Pell. The descriptions of events thereafter are somewhat varied. Pell testified he was pinned to the car and pushed down the street at a speed of approximately 25–30 MPH. He was able to push himself aside only after the car slowed down. Appellant and two other witnesses indicated that Pell was ac-

tually sitting on appellant's hood. In any event, the car accelerated forward and made contact with Pell.

A group of five or six Commercial employees followed appellant. The employees stated that at one point the car stopped, and the unidentified man started to get out but returned to the car when he saw them. Shortly thereafter, the employees lost sight of the car and gave up the chase.

Appellant eventually allowed the suspect to go free. He drove home without having ever obtained the suspect's name or reporting the incident to the police.

■ Appellant first asserts the trial court erred in failing to submit an instruction on Count I under either MAI–CR3d 306.14 "Justification: Use of Force by Law Enforcement Officer," or MAI–CR3d 306.-06 "Justification: Use of Force in Self–Defense," when the issue of self-defense was clearly in evidence.

Rule 30.06(e) provides: "If a point relates to the giving, refusal, or modification of an instruction such instruction shall be set forth in full in the argument portion of the brief." Appellant failed to set out the applicable instructions in his argument. The point, therefore, is not subject to review by this court. *State v. Money*, 697 S.W.2d 269, 271 (Mo.App.1985). We, therefore, review only for plain error pursuant to Rule 29.12(b).

Appellant's principal foundation for his argument on this point is § 85.230, RSMo, which purported to confer upon "councilmen" of cities of the first class "the power to arrest ... with or without process." We need not determine whether that section ever applied to aldermen of the City of St. Louis for the reason that it was repealed by the General Assembly in 1983, some five years prior to the events which gave rise to this case. The argument is without merit.

■ An instruction on justification for use of force in self-defense pursuant to MAI–CR3d 306.06 would also have been unwarranted. To be entitled to an instruction on self-defense, a defendant must: a) not have been the aggressor; b) have had reasonable grounds to believe that he was

faced with immediate danger of serious bodily injury; c) not have used more force than was necessary; and d) must do everything to avoid the danger, retreating if possible. *State v. Hajek*, 716 S.W.2d 481, 483 (Mo.App.1986). If substantial evidence puts self-defense at issue, the court must instruct the jury on self-defense even when it has not been requested to do so by the defendant. *Id.* We view the evidence in a light most favorable to appellant's theory of self-defense. *Id.*

The only evidence adduced at trial which might put self-defense at issue is the fact that Gerald Holdman grabbed appellant's arm or shoulder. Appellant, however, was not prevented from getting into his car and was not placed in any danger. Furthermore, appellant's assault was directed at David Pell who in no way threatened or endangered appellant. Self-defense was not at issue, and the trial court committed no error in failing to instruct on it. Point I is denied.

■ Appellant next claims that the trial court erred in submitting Instruction No. 6, the verdict director relating to the charge of hindering prosecution. Appellant contends the evidence was insufficient to support the instruction and to submit the case to the jury.

### INSTRUCTION NO. 6

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about February 17, 1988, an unknown person committed the offense of tampering with an automobile by removing or attempting to remove license plate tabs from an automobile owned by Minnie Hester, without her permission, and

Second, that on or about February 17, 1988, in the City of St. Louis, State of Missouri, the Defendant provided the unknown person with transportation to aid him in avoiding apprehension, and

Third, that Defendant so acted for the purpose of preventing the apprehension of the unknown person for the offense referred to in paragraph first,

then you will find the Defendant guilty under Count II of hindering prosecution.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the Defendant not guilty of that offense.

In determining whether there is sufficient evidence to support a criminal conviction, we must consider the evidence in the light most favorable to the state, ignoring all contrary evidence and inferences. *State v. Stewart*, 636 S.W.2d 345, 346 (Mo.App. 1982). We need not repeat the evidence appearing in the transcript and summarized in the facts above. We also again reject defendant's assertion of his "right" to arrest and take into custody the "unknown person" suspected of tampering with an automobile. As previously set forth, the statute which appellant claims conferred that right, § 85.230, RSMo, was repealed in 1983. When viewed in light most favorable to the state, the evidence is sufficient to support the three elements of Instruction No. 6 and to convict appellant on Count II. The point is denied.

■ In his third point, appellant contends the trial court's refusal to strike two prospective jurors for cause forced him to utilize peremptory challenges and reduced his chances of selecting a fair jury. Appellant argues that venireperson Marts had indicated a strong belief, based on media coverage, that appellant's behavior indicated that he had interfered with the law. Venireperson Sadlo indicated a belief that it would be necessary for appellant to testify before Sadlo could perceive him as innocent.

An accused must be afforded a full panel of qualified jurors before he is required to use his peremptory challenges; denial of a legitimate request to excuse for cause a partial or prejudiced venireperson constitutes reversible error. *State v. Stewart*, 692 S.W.2d 295, 298 (Mo. banc 1985). The trial court, however, has wide discretion in determining the qualifications of a prospective juror, and the court's decision will not be disturbed unless there is a clear abuse

of discretion. *Id.* The trial court is in a unique position to observe the demeanor of potential jurors, *State v. Lingar*, 726 S.W.2d 728, 734 (Mo. banc 1987), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987), and is better positioned to make a determination than we are from the record. Any doubts regarding the trial court's findings will, therefore, be resolved in its favor. *State v. Smith*, 649 S.W.2d 417, 422 (Mo. banc 1983), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983).

We find ample support for the trial court's finding that venirepersons Sadlo and Marts could be fair and impartial jurors. Although Sadlo and Marts initially stated they would be influenced by appellant's failure to testify on his own behalf and by certain news reports, both jurors responded to very pointed questions from the trial judge on these issues. Based on their answers, the court below determined that both Sadlo and Marts were qualified. After considering the record and the trial court's superior position for observing the qualifications of prospective jurors, we find no abuse of discretion. Point III is denied.

Appellant, in his fourth point, claims the trial court erred in denying his motion for mistrial when he developed on cross-examination of Officer Roe that a statement made by appellant had not been disclosed under Rule 25.03. Appellant asserts that failure to provide such discovery constituted prejudicial conduct, and the trial court's refusal to invoke sanctions was prejudicial error. We disagree.

The declaration of a mistrial is a drastic remedy to be used with extreme caution and only in the most extraordinary circumstances. *State v. Lee*, 654 S.W.2d 876, 879 (Mo. banc 1983). Motions for mistrial are addressed to the sound discretion of the trial court. *Id.*

■ Defendants must be permitted to prepare to meet every element of the case against them. *State v. Harrington*, 534 S.W.2d 44, 47 (Mo. banc 1976). The state's failure to disclose statements, such as these, can be fundamentally unfair and result in prejudicial error. *Id.* at 48. Funda-

mental unfairness from failure to disclose evidence is determined by whether discovery of such evidence would have affected the outcome of the trial. *Stewart*, 636 S.W.2d at 348. Had it been excluded from evidence, appellant's statement to Officer Roe would not have affected the outcome of this case. The statement was consistent with testimony from other witnesses and from the appellant himself. It indicated that as appellant drove past a group of men holding pipes, and surrounding a black man, he stopped, put the black man in his car and drove off. Appellant further stated that the man got out of his car in North St. Louis. The statement was not contradictory to appellant's defense or his testimony at trial. Moreover, appellant's attorney was given the opportunity to examine the police report containing the statements in question during trial and prior to the presentation of defense evidence. We find the admission of this evidence was not fundamentally unfair as the statements had no substantive effect on the outcome of the case. We conclude the trial court did not abuse its discretion in refusing to order a new trial. Point IV is denied.

In his fifth point, appellant alleges the trial court erred in allowing hearsay evidence by witnesses Pell and Herbis to be admitted. Appellant claims these out-of-court statements were used to bolster or fortify evidence of other witnesses and that their admission was prejudicial. "Hearsay evidence is in-court testimony of an extrajudicial statement offered to prove the truth of the matters asserted therein, resting for its value upon the credibility of the out-of-court declarant." *State v. Harris*, 620 S.W.2d 349, 355 (Mo. banc 1981).

■ David Pell testified that, when appellant sought to remove the suspect from the scene, Gary Holdman told appellant, "We're going to wait for the police to come." We are not concerned with the veracity of the out-of-court declarant, Gary Holdman, because the statement was not offered to prove the truth of the matter asserted therein, that the group was in fact waiting for the police to arrive. The statement is relevant to show its effect on ap-

pellant, that he knew the unidentified man was a suspect and that matters were under control. Whether the group was in fact waiting for the police to arrive was never an issue. An out-of-court assertion introduced to prove that one to whom the assertion was communicated had knowledge or notice of something is not hearsay.

 Appellant also contends that witness Herbis' testimony concerning Pell's statements to the suspect, "Dave told him that we would wait here and do nothing with him until the police arrived" and "Pell said, that's my car," were hearsay. Again these statements were not offered for their truth. Rather, they were relevant to show their effect on the suspect, who pulled a knife and took off running.

The statements made by Pell and Herbis were not offered to prove the truth of the matters asserted therein and are not hearsay. Point V is denied.

 Appellant's final point states the trial court erred in allowing the opinion evidence of witness Emile Salman into evidence and in further allowing questioning of said witness regarding whether David Pell was in danger. Appellant contends such opinions and questioning prejudicially invaded the province of the jury.

In the examination of witness Salman, a Jordanian, the following exchange took place:

Q (By Assistant Circuit Attorney) Now after he put the thief in the car, what did he do then?

A On (sic) of the workers said, you're not going anywhere. He stepped in front of the car and he drove fast. We had to watch from there and it scare everybody. He scare everybody; almost killed him.

Q He scared all of you, he drove that fast—

Defense Counsel: —I object to this opinion of this witness as not—

A —the guy—

THE COURT: —wait a minute. I can't hear you

Defense Counsel: I'm going to object him (sic) testifying to what anybody else

thought about what was going on and his opinion about how fast or anything along those lines—

THE COURT: —Overruled. I'll overrule the objection as to the question and the answer that was elicited. You may proceed.

Q (By Assistant Circuit Attorney) Who was the person on the car?

A I think, David.

Q Did you think David was in danger—

Defense Counsel: —I object to this, your Honor, to the opinion that that man—

THE COURT: —Overruled. You may answer the question.

The witness' answer was clearly susceptible to an affirmative interpretation by the jury.

Generally, a witness must state facts from which jurors form opinion. *State v. Morrow*, 541 S.W.2d 738, 742 (Mo.App. 1976). It was not, however, error to admit this testimony. A trial court enjoys considerable discretion in admitting opinion evidence. *State v. Reilly*, 674 S.W.2d 530, 533 (Mo. banc 1984). Appellant testified his car was "rolling fast" when David Pell was in front of it, yet insists the jury was prejudiced by witness Salman's statements. We cannot say these statements were so prejudicial as to deprive appellant of a fair trial. We find no abuse of discretion. The point is denied.

The judgment of the trial court is affirmed.

HAMILTON, P.J. and CARL R. GAERTNER, J., concur.