STATE of Missouri, Plaintiff–
Respondent,

v.

Kevin L. WINSTON, Defendant–
Appellant.

No. 70646.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 2, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 15, 1998.

Application for Transfer Denied
Feb. 24, 1998.

Kent Denzel, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Meghan J. Stephens, Asst. Atty. Gen., Jefferson City, for respondent.

AHRENS, Presiding Judge.

Defendant, Kevin L. Winston, appeals from the trial court's judgment entered on his convictions of three counts of burglary in the second degree and three counts of stealing in excess of $150. Sections 569.170; 570.030 RSMo (1994).[1] The trial court sentenced defendant to six terms of fifteen years of imprisonment to run concurrently. We affirm.

Defendant does not dispute the sufficiency of the evidence to support the jury's verdicts. Viewed in the light most favorable to the verdicts, the evidence adduced at trial established the following facts. The three burglaries in question took place between July and October of 1994. The first burglary took place on July 23, 1994 at Ronsick's Auto Care Station. The manager of Ronsick's called the police around 6:00 A.M. and reported that someone had thrown a brick through a window and stolen lottery tickets valued at $453 and 46 packs of cigarettes. He also notified the Missouri Lottery of the stolen lottery tickets. At the crime scene, the police found defendant's fingerprints on some packs of cigarettes and blood that matched the blood type of defendant.

---

1. All statutory references are to RSMo. (1994).

The second burglary also occurred at Ronsick's Auto Care Station on October 7, 1994. As with the prior burglary, the manager reported to the police that someone had entered the building by breaking one of its windows. Also similar to the July burglary, the burglar had stolen lottery tickets and packs of cigarettes. The manager of Ronsick's also notified the Missouri Lottery of the stolen tickets.

Later on the morning of October 7, defendant cashed the stolen lottery tickets at a local Schnucks store. The Missouri lottery immediately notified the Ferguson Police Department of the cashing of the stolen tickets. A Detective Mudd responded to the lottery's notification by proceeding to the Schnucks store. At the Schnucks store, Detective Mudd seized a surveillance video tape showing that defendant was the individual who cashed the stolen tickets. Detective Mudd also showed a picture of defendant to two clerks at the Schnucks store and both identified defendant as the person who cashed the stolen tickets.

On October 23, 1994, the Florissant Quick Shop was burglarized early in the morning. As with the prior two burglaries, the burglar gained entry into the building by breaking one of the windows with a brick. Also, the burglar stole lottery tickets worth $1,799 and an undisclosed amount of cigarettes. Later that afternoon, a police officer observed defendant carrying a black trash bag containing a large amount of lottery tickets. When the officer inquired into the defendant's name, the defendant falsely identified himself as "Benny" Winston. Defendant also provided the officer with three different social security numbers, none of which were valid numbers. Based on his inconsistent statements and suspicious behavior, the officer then placed defendant under arrest.

Defendant had in his possession 1,100 lottery tickets and six packs of cigarettes at the time of his arrest. The police determined that the lottery tickets in defendant's possession were stolen during the robbery of the Florissant Quick Trip. The State charged defendant with three counts of second degree burglary and three counts of stealing $150 or more. Sections 569.170; 570.030. After a four day trial, the jury returned guilty verdicts on all six counts. The trial court entered judgment against defendant on the jury's verdicts and imposed six fifteen year sentences on defendant to run concurrently. Defendant then filed a motion for a new trial which the trial court denied. This appeal follows.

In his first point, defendant alleges the trial court erred in allowing his girlfriend's sister, Leudovie Jemison, to identify him in a print generated from a video tape of the surveillance camera taken during the July 23, 1994 burglary at Ronsick's Auto Care Station. Defendant asserts that the trial court was required to exclude Ms. Jemison's identification since it "invaded the province of the jury". Defendant bases this argument on his assertion that since the jury had the opportunity to view both the print of the surveillance camera video tape and the defendant, the jury was in as good a position to determine if defendant was the person in the print as was Ms. Jemison. We disagree.

The trial court has wide discretion in admitting the testimony of a lay witness into evidence. *State v. Matthews*, 793 S.W.2d 481, 486 (Mo.App.1990). We will not reverse the trial court's ruling unless it constitutes an abuse of discretion. *Id.*

As defendant points out, a lay witness, generally, may not testify as to an opinion on a matter in dispute. *Mohr v. Mobley*, 938 S.W.2d 319, 321 (Mo.App.1997). The rationale underlying this "opinion rule" is that since the lay witness does not possess specialized knowledge on the matter, the lay witness and the jury are in equal positions to form an accurate opinion. *Id.* Courts have created an exception to the opinion rule by allowing lay witnesses to testify as to their opinion if the lay witness is in possession of knowledge that the jury does not also possess since it would be helpful to the jury in determining an issue in dispute. *State v. White*, 790 S.W.2d 467, 473 (Mo.App.1990); *See also* Fed.Rules of Evid. 701. Thus, in the identification context, a lay witness' opinion testimony is admissible if there a basis for concluding that the witness is more likely to correctly identify the defendant than is the

jury. *State v. Linzia,* 412 S.W.2d 116, 120 (Mo.1967); *United States v. Farnsworth,* 729 F.2d 1158, 1160 (8th Cir.1984).

Here Ms. Jemison had spent time with defendant in the time immediately surrounding the burglaries and was familiar with his features. Also, the record indicates that the person in the printout of the video tape was moving quickly and is somewhat difficult to see. Based on this record, we find that there was a basis for concluding that Ms. Jemison was more likely to correctly identify the defendant than was the jury. Thus, the trial court did not abuse its discretion in allowing Ms. Jemison to identify defendant as the person in the print taken from the surveillance camera during the July 23, 1994 burglary of Ronsick's Auto Care Station. Defendant's first point is denied.

In his second point, defendant claims the trial court erred in denying his request for a mistrial after Officer Mudd testified that a photograph of defendant was a "mug shot". A trial court is required to grant a mistrial only if there is a grievous error that cannot be remedied. *State v. Leisure,* 810 S.W.2d 560, 571 (Mo.App.1991). Since the trial court is in a much better position to determine the prejudicial effects from the alleged error, we will affirm its decision not to grant a mistrial unless that decision constitutes an abuse of discretion. *Id.*

The trial court does not abuse its discretion in denying a defendant's motion for a mistrial if the alleged improper remarks are a vague and indefinite reference to an unspecified crime. *State v. Rhodes,* 829 S.W.2d 41, 44 (Mo.App.1992). Here, Officer Mudd never referred to a specific crime that defendant may have committed. Also, the prosecutor admonished Detective Mudd not to refer to the photograph as a "mug shot" after the first comment. On this record, we find that Detective Mudd's comment was, at most, a vague and indefinite reference to an unspecified crime. The trial court, therefore, did not abuse its discretion in denying defendant's motion for a mistrial. Defendant's second point is denied.

Defendant next asserts that the trial court erred in denying his motion to suppress the two Schnucks' clerks', Mary Tracy and Wayne Barnes, in court identification of defendant as the person who cashed in the stolen lottery tickets. We will affirm the trial court's ruling denying defendant's motion to suppress the in court identification unless defendant can demonstrate that (1) the police procedures employed in the out of court identification procedure was impermissibly suggestive; and (2) the suggestive procedures made the in court identification unreliable. *State v. Davis,* 860 S.W.2d 369, 374 (Mo.App.1993). Since the trial court has the opportunity to judge the credibility of the witnesses, we will not disturb its ruling unless it is clearly erroneous. *State v. Hoopingarner,* 845 S.W.2d 89, 92 (Mo.App.1993). Also, we view the facts in the light most favorable to the ruling of the trial court and disregard any contrary evidence and inferences. *Id.*

Here, the only photograph that Officer Mudd showed the witnesses was that of the defendant. As the state points out, the showing of only one photograph is not impermissibly suggestive if there is no accompanying comment or activity on the part of the police. *State v. Humphrey,* 789 S.W.2d 186, 190 (Mo.App.1990). However, in the present case, Detective Mudd stated to the witnesses that the photograph was the picture of a suspect in another burglary. Arguably, this statement was impermissibly suggestive in that it may have implicitly suggested to the witnesses that defendant was also a suspect in this burglary as well.

Although Detective Mudd's statement may have rendered the out of court identification procedure unduly suggestive, the reliability of the in court identification is the key in determining whether the trial court should have allowed the identification into evidence. *State v. Hornbuckle,* 769 S.W.2d 89, 94 (Mo. banc 1989); *cert. denied* 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989). The trial court must assess the reliability of in court identification under the totality of the circumstances. *Id.* at 93. The relevant factors in assessing this reliability include: (1) the opportunity of the witness to

view the defendant at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the defendant; (4) the level of certainty demonstrated by the witness at the time of identification; and (5) the length of time between the crime and the identification. *Id.*

Here, both Tracy and Barnes had ample opportunity to view defendant for ten to fifteen minutes in a well lit area. Also, both testified that they paid particular attention to defendant since he was dressed in all black and was carrying a black trash bag at 7:00 a.m. Furthermore, both witnesses gave an accurate description of defendant to Detective Mudd before they identified him in the photograph. Finally, both immediately and unequivocally identified defendant as the person who redeemed the stolen lottery tickets. Viewing this record in the light most favorable to the trial court's ruling, we find that the trial court did not abuse its discretion in denying defendant's motion to suppress Ms. Tracy's and Mr. Barnes' in court identification. Defendant's third point is denied.

In his final point, Defendant argues the trial court erred in denying his *Batson* objections to the State's peremptory strikes against two African–American venirepersons, Mrs. Shahid and Mr. Perry. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We will affirm the trial court's denial of defendant's *Batson* claims unless it is clearly erroneous. *State v. Smulls,* 935 S.W.2d 9, 14 (Mo. banc 1996) *cert. denied* —— U.S. ——, 117 S.Ct. 2415, 138 L.Ed.2d 180 (1997). We will find the trial court's ruling clearly erroneous only if we are left with a definite and firm conviction that a mistake has been made. *Id.*

In order to establish a *Batson* claim, defendant must make a timely objection to the State's use of specific peremptory strikes on the basis that the State used the strikes against venirepersons based on their race. The State then must proffer race neutral explanations as to why it struck the venirepersons in question. *Id.* If the state advances acceptable reasons for the peremptory strikes, the burden shifts to the defendant to demonstrate that the proffered rea-

sons are merely pretextual and that the strikes are racially motivated. *Id.*

Defendant asserts that since there were some similarities between a white venireperson, Mr. Fisher, who the prosecutor did not strike and the two African–American venirepersons who the prosecutor did strike, the trial court's denial of defendant's *Batson* objections were clearly erroneous. We disagree.

In determining whether a defendant has successfully carried his burden of proof in a *Batson* challenge, the trial court must take into account any factor that detracts from or lends credence to the prosecution's non-racial explanation for striking the venireperson in question. *State v. Parker,* 836 S.W.2d at 930, 939 (Mo. banc 1992) *cert denied* 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992). Thus, the existence of similarities between a white venireperson who was not struck and an African–American venireperson who was struck is certainly relevant in analyzing a *Batson* challenge. *Id.* at 939–40. However, it is not dispositive to the analysis. *House v. Missouri Pacific R.R. Co.,* 927 S.W.2d 538, 542 (Mo.App.1996). Rather, the trial court must determine if the prosecutor struck the venireperson because of his or her race in light of the totality of the facts and circumstances surrounding the case. *Parker,* 836 S.W.2d at 939.

Here, as defendant points out, there was a similarity between Fisher and Shahid and Perry in that they all knew potential witnesses. Mr. Fisher stated in voir dire that he might have known Gary Williams, the manager of Ronsick's Auto Care Station. Ms. Shahid revealed in voir dire that Detective Mudd had conducted the investigation of her complaint that her husband physically abused her. Mr. Perry worked at a Schnucks in close proximity to the Schnucks where Ms. Tracy and Mr. Barnes worked. Thus, there was the possibility that Mr. Perry may have been acquainted with either Ms. Tracy or Mr. Barnes.

Although there were some similarities between the two African–American venirepersons who were struck and the white venireperson who was not struck, there were also important, non-racial, differences between

them as well. With respect to Ms. Shahid, the prosecutor asserted that he was striking her because she had a negative view of the police. In support of this race neutral explanation, the prosecutor pointed to the fact that Ms. Shahid stated in voir dire that she was not pleased with the manner in which the police handled an investigation of a robbery in which she was the victim. Also, the prosecutor relied on Ms. Shahid's statement of "Oh yeah. He didn't beat me up." in response to a question by defendant's attorney of whether she could be impartial in light of the fact she had dealt with Detective Mudd in a domestic abuse situation.[2] There is nothing in the record that suggests that Mr. Fisher had a similar negative view of the police.

There were also important differences between Mr. Perry and Mr. Fisher. First, Mr. Fisher had not seen Gary Williams in over a year while Mr. Perry was still employed at Schnucks at the time of trial. Thus, there was a greater likelihood that Mr. Perry was more closely associated with a potential witness than was Mr. Fisher.

A second factor that distinguishes Mr. Fisher from Mr. Perry is that Mr. Fisher stated in voir dire that he found State's witness Mr. Williams "credible." In fact, defendant attempted to strike Mr. Fisher for cause since he had a positive preconceived notion about Mr. Williams' credibility. Mr. Perry never manifested such a favorable opinion on the credibility of a state's potential witness. Thus, the record supports the trial court's finding that the State's decision not to strike Mr. Fisher was based on a race neutral reason.

After considering this record in light of the totality of the facts and circumstances surrounding the case, we are not left with a definite and firm conviction that the prosecutor struck venirepersons Perry and Shahid because of their race. Thus, the trial court's denial of defendant's *Batson* claims were not clearly erroneous. Defendant's fourth point is denied.

The judgment of the trial court is affirmed.

CRANDAL, J., concurs.

KAROHL, J., dissents on Batson issue only.

---

**2.** There was a dispute as to whether Ms. Shahid intended this comment to be derisive of the police and Detective Mudd or whether Ms. Shahid was merely stating this in reference to the fact that her husband had been physically abusing her. In such a situation, we will defer to the trial court's opportunity to view the demeanor of the venireperson. *Parker,* 836 S.W.2d at 934.