**STATE of Missouri, Respondent.**

v.

**Michael KAYSER, Appellant.**

**No. ED 97679.**

Missouri Court of Appeals,
Eastern District,
Division Five.

April 16, 2013.

38

Erika R. Eliason, Columbia, MO, for appellant.

Chris Koster, Jillian S. Anderson, Jefferson City, MO, for respondent.

GARY M. GAERTNER, JR., Chief Judge.

*Introduction*

Michael Kayser (Defendant) appeals the trial court's judgment of conviction for sexual misconduct in the second degree. Defendant argues that the trial court abused its discretion in overruling his motion to suppress an out-of-court identification of Defendant and in admitting the identification at trial. We affirm.

*Background*

On June 5, 2010, Tricia Staley (Mother) was riding in the front passenger seat of a Chevy Tahoe driven by her mother, Gail Sykes (Grandmother). Mother's two daughters, P.S. and M.S., were also passengers in the car. They were stopped at a stoplight on Mexico Road when Mother heard P.S., who was nine years old, ask what a man in a car next to them was doing. Mother looked behind her to the left and saw a man masturbating in the car next to P.S.'s passenger door. Though Mother did not see the man's genitals, his arm movements indicated to her that he was masturbating. When the light turned green, Grandmother moved into the lane behind the man's vehicle and memorized his license plate number. She immediate-

ly drove to the police department to report the incident.

At the police station, Grandmother provided the license plate number she had memorized to Officer Jacob Bass (Officer Bass). Officer Bass discovered the car was registered to an Amanda Mottert (Mottert). Through his investigation, Officer Bass learned that Mottert was married to Defendant, who regularly drove Mottert's car.

Officer Bass later interviewed Defendant. Defendant stated that he worked at Hardee's located near North Third Street and 370, and that he would regularly travel on Mexico Road past the stoplight where the incident had occurred. Defendant also lived about two miles from the intersection where the incident had occurred.

Officer Bass compiled three photographic lineups using six photographs in each. Only one of the three lineups contained a photograph of Defendant; that lineup also contained five photographs of other men who resembled him. Officer Bass testified that Defendant told him he wore glasses, but the photograph of Defendant used in the lineup did not show Defendant wearing glasses. The other two lineups contained pictures of two white males in their mid- to late twenties who each had the last name of Mottert, and Officer Bass created those two lineups because of the possibility that either of the men was related to Mottert and had borrowed her car. There were a total of 18 different individuals' photographs used in the three photographic lineups.

On June 9, 2010, Detective Nicole Maynard (Detective Maynard) met with P.S. and Mother at the police department in order to show P.S. the photographic lineups. Detective Maynard asked Mother to sit with P.S. while P.S. viewed the photographs, because P.S. seemed nervous and scared. As she was looking at the photographs, P.S. expressed concern to her mother because the man she had seen in the car had been wearing glasses, but none of the men in the photographs were wearing glasses. Mother told P.S. to "do her best and imagine the person without glasses on." P.S. then identified Defendant's photograph. Detective Maynard had P.S. circle the picture she had chosen and put her initials next to it. After P.S. had done so, Mother stated that she would have chosen the same photograph. While Mother did not make an independent identification, she did initial the photograph P.S. had initialed because P.S. was a minor.

Defense counsel filed a motion to suppress any in-court identification of Defendant as well as any testimony regarding all out-of-court identifications of Defendant, which the trial court denied. After a two-day trial, the jury found Defendant guilty of sexual misconduct in the second degree. The trial court sentenced Defendant to six months in jail.

This appeal follows. Defendant's sole claim of error is the trial court's admission of P.S.'s photographic lineup identification.

### Standard of Review

The trial court has broad discretion to admit or exclude evidence. *State v. Forrest,* 183 S.W.3d 218, 223 (Mo. banc 2006). We will reverse a trial court's ruling on a motion to suppress only if it is clearly erroneous, and we will reverse admission of testimony only if the trial court abused its discretion. *Foster v. State,* 348 S.W.3d 158, 161 (Mo.App. E.D.2011).

### Discussion

In Defendant's sole point on appeal, he argues that the trial court abused its discretion in overruling his motion to suppress P.S.'s out-of-court identification of

him at trial, because the identification was the result of an impermissibly suggestive police procedure which rendered P.S.'s identification unreliable. We disagree.

The test for admission of identification testimony is two-pronged: (1) whether the pre-trial identification procedure was impermissibly suggestive, and (2) if so, the impact the suggestive procedure had upon the reliability of the identification made by the witness. *State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo. banc 1989). "A pretrial identification is unduly suggestive when the identification results from police procedures or actions, instead of the witness' recall of first-hand observations." *State v. Eoff*, 193 S.W.3d 366, 375 (Mo.App. S.D.2006); *see also State v. Glover*, 951 S.W.2d 359, 362 (Mo.App. W.D.1997). If Defendant is unable to show the procedure was impermissibly suggestive under the first prong, we need not reach the second prong. *See State v. Hoopingarner*, 845 S.W.2d 89, 94 (Mo.App. E.D.1993); *State v. Morant*, 758 S.W.2d 110, 118 (Mo.App. E.D.1988) (when procedure found not impermissibly suggestive, evidence of suggestiveness goes to weight, not admissibility).

Regarding the first prong, Defendant contends that the lineup procedure leading to P.S.'s identification of Defendant was impermissibly suggestive because Detective Maynard allowed Mother to be with P.S. while P.S. viewed the photographic lineup, Detective Maynard permitted Mother to tell P.S. to envision the man she saw in the car without glasses, and because Mother told P.S. after P.S. had identified Defendant that Mother also would

have chosen his photograph. Defendant argues that these circumstances created a very substantial likelihood of misidentification.

First, Defendant's assertion that the identification procedure was impermissibly suggestive because Mother was present with P.S. when P.S. viewed the photographs is without merit. Defendant cites no authority for this proposition, and we find none. In fact, general practice [1] and common sense dictate otherwise. *See Johnson v. State*, 265 Ind. 689, 359 N.E.2d 525, 531 (1977) (noting detectives showed photographic lineup to child victims in victims' home with parents present).

In essence, we are dealing with a photographic lineup identification by a nine-year-old girl who witnessed an abnormal upsetting event. She then had to go into a police station and tell a police officer, whom she did not know, about what happened. She had to try to pick the man's picture from 18 different photographs the police officer showed her. It is only natural that a nine-year-old child facing such a situation would be scared.

Law enforcement daily deals with young victims. In these situations, the parents of the children are often necessarily present during photographic lineup identifications. We hold that the presence of parents with their children during a photographic lineup does not render the identification procedure unduly suggestive in and of itself. In accordance with the test for suggestiveness, so long as the procedure ensures the identification remains one based on the witness' recall of first-hand observations, rather than on any

---

1. Defendant argues that the procedure here was contrary to police practice because Detective Maynard testified she ordinarily would not allow anyone else to be present when a witness views a photographic lineup. However, this was in response to the question "if you were showing the line-up to an adult, you wouldn't have anyone else present ...". Detective Maynard's common practice when showing a lineup to a child was not established.

statements of or actions by third parties present, then the procedure is not unduly suggestive. *Accord Eoff,* 193 S.W.3d at 375.

▮ Here, not only did Mother's presence fail to contaminate the identification procedure, but apparently Mother's presence actually allowed P.S. to regain her composure to make an identification based on her memory rather than fear. Mother's presence alone did not render the identification procedure unduly suggestive.

▮ Next, Defendant argues that Mother's statement encouraging P.S. to imagine the man she had seen in the car without glasses was unduly suggestive. Defendant compares the present case to *State v. Winston,* 959 S.W.2d 874 (Mo.App. E.D.1997). There, a police officer had shown two witnesses only the defendant's photograph and had told the witnesses that the person in the photograph was a suspect in another crime. *Id.* at 878. After noting that showing only one photograph to a witness is not per se unduly suggestive, this Court found that showing one photograph in combination with the officer's statement arguably rendered the identification procedure impermissibly suggestive, in that the officer's statement implied the person in the photograph was also a suspect in the crime the witnesses observed.[2] *Id.*

Defendant argues that the statement Mother made to P.S. was more suggestive than that in *Winston.* However, unlike in *Winston,* P.S. viewed 18 photographs ver-sus one. Furthermore, no law enforcement officer made any statement about any of the 18 photographs P.S. viewed. Likewise, Mother's statement related only to P.S.'s memory of the person she saw in the car, and not to any specific photograph.

A more analogous case is *King v. Bowersox,* 213 F.Supp.2d 1026 (E.D.Mo.2001).[3] There, the witness was only able to make a positive identification of the defendant after one of the officers placed his finger over the top of the defendant's photograph to simulate a bandana that the witness had said the perpetrator was wearing. *Id.* at 1032. The police officer there did not place his finger over any other photograph in the photographic lineup. *Id.* This Court found even this procedure was not impermissibly suggestive because there was no evidence that the police officer had coached the witness. *Id.* The emerging pattern in both *Winston* and *King* is that a physical indication by an officer toward a particular photograph coupled with a statement related to that photograph could render the procedure impermissibly suggestive.

However, here, we have neither of these circumstances. Neither the law enforcement officer nor P.S.'s mother pointed to or made any physical indication related to any one of the 18 photographs. Additionally, neither Detective Maynard nor Mother made any statement to P.S. specifically regarding Defendant's photograph. For example, Mother did not tell P.S. to imag-

2. Nevertheless, this Court went on to analyze the identification under the second prong of the test and found the identification reliable despite any suggestion on the part of the police officer. *Winston,* 959 S.W.2d at 879.

3. This case is a decision of a federal district court on a defendant's federal petition for habeas corpus, filed after the defendant's state convictions had been affirmed by this Court on appeal. This Court disposed of the direct appeal by a written order and an attached memorandum opinion available to the parties only, rather than by a formal opinion, *see State v. King,* 962 S.W.2d 954 (Mo.App. E.D.) (citing Mo. R. Crim. P. 30.25(b) (1998) and Mo. R. Civ. P. 84.16(b) (1998)). However, the later federal district court decision in *King v. Bowersox* describes the appeal as well as some of this Court's rationale.

ine glasses specifically on the photograph of Defendant. Even if she had, such a statement would not necessarily be unduly suggestive. *King,* 213 F.Supp.2d at 1032. We find that Mother did not contaminate her daughter's identification of Defendant by telling her to "do her best and imagine the person without glasses on," when P.S. expressed concern that none of the photographs showed men wearing glasses. Mother's statement did not render the procedure impermissibly suggestive.

■ Finally, Defendant contends that the lineup procedure was impermissibly suggestive because Mother's statement that Mother would have chosen the same photograph reinforced P.S.'s choice. However, neither Detective Maynard nor Mother said anything to affirm P.S.'s identification until after P.S. had circled the picture of the Defendant and initialed next to it. Only then did Mother state that she would have chosen the same picture. Again, Defendant cites no case, and we find none, holding that statements made after a witness confirms his or her identification can render the identification procedure impermissibly suggestive. Further, the implication of this argument defies logic: that an effect can occur in time before its cause. Mother's after-the-fact statement that she also would have identified Defendant did not contaminate the already completed identification procedure.

Because we have found the identification procedure was not impermissibly suggestive, we need not analyze whether the procedure had an impact upon the reliability of the P.S.'s identification. *Hoopingarner,* 845 S.W.2d at 94; *Morant,* 758 S.W.2d at 118. Point denied.

*Conclusion*

The trial court did not clearly err in overruling Defendant's motion to suppress P.S.'s out-of-court identification, nor did the trial court abuse its discretion in admitting such evidence at trial. We affirm.

ROBERT M. CLAYTON III, J. and THOMAS C. CLARK II, S.J., concur.